# Randolph v. Builders & Painters Supply Co.

*Bill in Equity to enforce Material-man's Lien.*

1. *Statutory lien of mechanics and material-men; act to provide therefor, approved February 12, 1891, unconstitutional.*—The act approved February 12, 1891, entitled "An act to provide liens for mechanics and material-men, and to repeal sections 3018, 3022, 3025, 3026, 3028, 3041 of the Code, and section 3027 as amended by the acts of 1888-89" (Acts 1890-91, pp. 578-580), is violative of the provision of the constitution that "each law shall contain but one subject, which shall be clearly expressed in its title" (Const. Art. IV, § 2), in that in the body

| 106 | 501 |
|-----|-----|
| 106 | 672 |
| 108 | 517 |
| 109 | 402 |
| 110 | 507 |
| 106 | 501 |
| 112 | 583 |
| 106 | 501 |
| 116 | 253 |
| 106 | 501 |
| 120 | 634 |
| 106 | 501 |
| 124 | 256 |
| 106 | 501 |
| 137 | 266 |

of the act its provisions are extended to persons not referred to in its caption, and rights are therein conferred not suggested by the title.

2. *Same; same; provision for attorneys fee.*—The second section of the act approved February 12, 1891, to provide liens for mechanics and material-men (Acts 1890-91, pp. 578-580), providing that the persons mentioned therein as being entitled to certain liens shall have a lien for attorney's fees, is unconstitutional and void, as being violative of the equality and uniformity of rights and privileges, which, by the fundamental principles of the constitution of the State (Const. Art. 1, §§ 2, 14), are secured to all persons.

3. *Same; same; provision as to effect of not notifying mechanic or material-man not to do the work or furnish the material.*—Section 6 of the act approved February 12, 1891 to give liens to mechanics and material-men, providing that "the fact that the person performing labor or furnishing materials is not notified in writing not to perform such labor or to furnish such material by the person in whom the title was invested at the time such labor was performed or such materials furnished, shall be *prima facie* evidence that it was by and with the consent of the owner that such labor was performed and materials furnished," is unconstitutional and void, in that it interferes with and destroys the full personal right to enter into contracts and obligations, imposes burdens and creates incumbrances never assumed, directly or indirectly, and practically operates to deprive the owner of his property without due process of law.

4. *Same; same.*—The said act approved February 12, 1891, to provide liens for mechanics and material-men and to repeal certain sections of the Code (Acts 1890-91, pp. 578-580), being intended to enlarge and extend the rights and remedies of mechanics and material-men as secured by the then existing statutes (Code, 1886, §§ 3018-3048), but being, by reason of the unconstitutionality and invalidity of several of its sections, less extended and beneficial and more incomplete than that law, and by reason of such defects incapable of having the operation and effect intended in its enactment, such act is wholly unconstitutional and void.

5. *Same; same; does not repeal the existing law.*—The said act being wholly unconstitutional and void, and there having been in its enactment no intention to repeal any part of the then existing law bearing upon the subject referred to therein, except to the extent it was to be replaced by that act, said act has no effect upon the sections of the Code attempted to be repealed, and the law partaining to mechanics' and material-men's liens remains as it was before the passage of said act.

APPEAL from the City Court of Montgomery, in Equity. Heard before the Hon. THOMAS M. ARRINGTON.

The bill in this case was filed by the appellee corporation, the Builders & Painters Supply Company, against Mary A. Randolph, A. Schultz and M. Dominitz, for the

purpose of enforcing a material-man's lien upon a house and lot of the respondent, Mary A. Randolph.

It is averred in the bill that the complainant furnished material to A. Schultz, who was a contractor with the said Mary A. Randolph for the erection of a building and other improvements upon a lot owned by her, which materials were used by said A. Schultz in the erection of said building; that the complainant also furnished materials to M. Dominitz, a sub-contractor of A. Schultz, which materials were also used in the erection of said buildings, and that complainant had not been paid for said material. It was also further averred in said bill that Mrs. Mary A. Randolph ''made payment to the said Schultz as said contractor for services performed and materials furnished under said contract, without demanding of said contractor a complete list of all material-men, laborers and employees, who had furnished any material or things, or had done any labor or performed any service or was under any contract or engagement to furnish any material or thing, or to do any labor or service for said contractor,'' &c., as provided by the statute. The bill also avers that the complainant has done such things as are necessary to enforce a lien upon the property of the respondent, Mrs. Mary A. Randolph, as provided by the act of the General Assembly, approved February 12, 1891. The prayer of the bill is for the enforcement of the material-man's lien for the material so furnished to the contractor Schultz and to the sub-contractor Dominitz. The respondent, Mrs. Mary A. Randolph demurred to the bill, among others, upon the following ground: ''That the said bill seeks to hold defendant liable for money, that it shows she had already paid to Schultz, because she had not demanded of said Schultz a list of laborers and material-men as required by the act of the General Assembly, approved February 12, 1891; and respondent avers that said act is unconstitutional, and not binding on her.''

Upon the submission of the cause, upon the demurrers interposed the chancellor decreed that they were not well taken, and overruled them. This appeal is prosecuted by the respondents, who assign as error the decree of the chancellor overruling the demurrer interposed to the bill.

DAVID T. BLAKEY, for appellant.—1. The act in this

case upon which the complainant bases its right to re-
lief is unconstitutional and void, as being violative of the
constitutional provision which requires that ''each law
shall contain but one subject which shall be clearly ex-
pressed in its title.''—*Ex parte Reynolds*, 87 Ala. 138;
*Glenn v. Lynn*, 89 Ala. 603; *Stuart v. Palmer*, 74 N. Y.
183.

2. Section 2 of the act is unconstitutional in that it
provides for an attorney's fee in favor of the lien holders
and does not give the same right to the other party.
*South & North Railroad Co. v. Morris*, 65 Ala. 193;
*People v. Bell*, 46 N. Y. 63; *Calhoun v. Fletcher*, 63 Ala.
583; *Stoudemire v. Brown*, 48 Ala. 699.

3. Sections 2½, 4 and 6 are violative of the constitu-
tional provision which prohibits the taking of property
without due process of law.—*L. & N. R. R. Co. v. Bald-
win*, 83 Ala. 619; *Saler v. Langham*, 34 Ala. 330; *People
v. Gilliam*, 109 N. Y. 389; Houck on Mechanic's Liens,
p. 81; *Spry Lumber Co. v. Trust Co.*, 77 Mich. 169.

Horace Stringfellow, *contra.*—1. The statute in
question is not unconstitutional. The utmost that can
be said against the statute is that it is class legislation, but
''it would be erroneous to say that it is class legislation
in a vitiating sense.'' It applies in favor of mechanics
and material-men against the owners of land, but it ap-
plies to all owners natural or artificial, who make a con-
tract to which the law making power conceives a lien
should attach in favor of the mechanics and material-
men.—*Youngblood v. Birmingham Trust & Savings Co.*,
95 Ala. 595.

2. Where the legislature deems it desirable to pres-
cribe peculiar rules to the several occupations, and to
establish distinctions in the rights and obligations,
duties and occupation of citizens; such as from public
policy, to give laborers and mechanics in one business a
specific lien for their wages, when it would be impolitic
or impracticable to do the same by persons engaged in
some other employment, all that can be required, if the
statute is otherwise unobjectionable, is that they be
general to the class or locality to which they apply; and
of their propriety and policy the legislature must
judge.—Cooley on Constitutional Limitations (4th. ed.),
p. 439.

3. So in the case at bar it is contended that the provision objected to violates the right of contract, and that it deprives the owner of an inalienable right to contract for the erection of his improvement without responsibility to any other than his contractor. The statute does not deprive him of this right, it only regulates it so far as is necessary for the security of the material-man and the mechanic from whom benefits are received. The owner can yet make a contract, but the statute giving the lien to the laborer, etc., is a part of it, requiring that his payments to the contractor, under his contract, should be made to the material-man and the mechanic. The statute merely directs the application of the payments to the contractor. If the payments so made, to the full amount of the contract price agreed upon with the contractor, do not discharge the sums owing to the material-men and the mechanics, the owner is none the less discharged, and his property relieved of the lien. This contract in such case is the benefit of his liability. It is true that encumbrances upon the owner's title can only be created by his consent or authortty. The statute, however, annexes the lien as an incident to the contract of the owner with the contractor while such is the law.—*Laird v. Norman*, 20 N. W. Rep. 354; *Albright v. Smith*, 54 N. W. Rep. 316.

4. If any of the sections of the statute were violative of any of the provisions of the constitution they could not affect the remainder of the statute. They can be stricken out without affecting any other clause.—*Ex parte Moore*, 62 Ala. 476; *Ex parte Cowart*, 92 Ala. 97; *Walker v. The State*, 49 Ala. 329; *Boyd v. The State*, 53 Ala. 201.

5. It is contended by counsel that the allowance of a lien for attorney's fee and costs provided for in section 2 of the act, is unconstitutional, citing *S. & N. R. R. Co. v. Morris*, 65 Ala. 193, and *L. & N. R. R. Co. v. Baldwin*. These cases are not in point. The statute we are considering annexes the lien for cost and attorney's fees to the contract of the owner as it annexes the lien for the amount due for the labor and materials, and the owner consents to the lien in making the contract while such is the law. (Authorities *supra*.)

6. Section four of the act is not unconstitutional upon

the ground that it makes a civil liability a felony, imposes imprisonment for debt, and is the exercise of the judicial power. This section is similar in purpose to section 3812 of the Code, which was unquestioned in *Ex parte Riley*, 94 Ala. 83; and is in line with other legislation in this State, for the suppression of fraud found in Part 5, Title 2, Chap. 4, Art. 5 of the Code.

7. Section six of the act is not unconstitutional in providing that in certain cases the consent of the owner to the performing of the labor or the furnishing of the materials may be presumed. That statute makes the failure of the owner to forbid the furnishing of the materials or the performance of the labor *prima facie* evidence of his consent. The statute defines the nature and amount of the evidence which the legislature deemed sufficient to establish a *prima facie* case, and to throw the burden of proof upon the owner. It is a presumption of law, that a person assents to what is for his benefit. A presumption that is applied in many cases, notably in the case of general assignments and conveyances made in payment of a debt, where the consent of the creditors benefitted is presumed.—*Truss v. Davidson*, 90 Ala. 360. The performance of the labor, and the furnishing of the materials being for some improvements or utility upon owner's land, and, therefore, for his benefit that statute authorizes these facts to constitute *prima facie* evidence of his assent. This class of presumptions arises from motives of public policy, they change from time to time and may be created by judicial or legislative action.—Cooley on Cons. Lim., p. 458; *Stoudemire v. Brown*, 48 Ala. 710.

HARALSON, J.—The caption of the act we are to construe is, "An act, to provide liens for mechanics and material-men, and to repeal sections 3018, 3022, 3025, 3026, 3028, 3041 of the Code, and section 3027 as amended by the Acts of 1888–89."—Acts of 1890–91, p. 578.

It is claimed by the appellant, that this statute is obnoxious to that provision of the Constitution of this State, (Art IV., § 2), which provides, that "Each law shall contain but one subject, which shall be clearly expressed in its title."

1. We have heretofore held in respect to this statute,

that it was intended to be, and was, in effect, an amendment of the mechanic's lien law as we have it in the Code of 1886; that a repeal of a few of the sections of the old law, replacing them by other provisions deemed harmonious with the parts of the old not repealed, indicated legislative intent to amend the former statutes, so as to create an enlarged and amended system of laws on this subject, which would be complete within itself.— *Birmingham B. & L. Asso. v. May & Thomas H. W. Co.,* 99 Ala. 278 ; *Colby v. St. James M. E. Church,* 99 Ala. 259 ; *Wimberly v. Mayberry,* 94 Ala. 251 ; *Wardsworth v. Hodge,* 88 Ala. 503.

2    Fortunately, our former decisions on the question now presented, relieves us from any necessity for its further discussion, and we do no more now than repeat, for the purpose in hand, what has been heretofore said : "The intention of this constitutional provision," said the court, was "that the title to the act or bill should inform the members of the legislature, and perhaps the public, of the subject on which the former were invited to vote and legislate. Matters foreign to the main objects of the bill had sometimes found their way into bills,—surreptitionsly, at times, it was charged, —and thus members were induced to vote for measures in ignorance of what they were doing. The constitutional provision intended to render this abuse impossible.

"This court has committed itself in favor of the following propositions, which are in harmony with the rulings elsewhere, in the best considered cases : That the clause is mandatory ; that its requirements are not to be exactingly enforced, or in such manner as to cripple legislation ; that the title of a bill may be very general, and need not specify every clause in the statute. Sufficient if they are all referable, and cognate to the subject expressed. And when the subject is expressed in general terms, everything which is necessary to make a complete enactment in regard to it, or which results as a complement of the thought contained in the general expression, is included in, and authorized by it."—*Ballentine v. Wickersham,* 75 Ala. 533, and authorities there cited ; *Wolf v. Taylor,* 98 Ala. 254.

3.   It seems to be a general rule that the title to an amendatory act, reciting the title of the amended act,

will be sufficient, if the new matter contained in the amendatory is fairly indicated by the original act; and that the amendment of a statute is a *subject* within the constitutional requirement, that the subject of a statute shall be embraced in its title.—23 Amer. & Eng. Encyc. of Law, 268, and authorities cited; Sutherland on Stat. Const., § 101.

The title of this amendatory act, does not recite the title of any other act, but proceeds as an independent act, although, as we have held, its evident design was of an amendatory character. As indicated by the title alone, it would appear to be legislation, intended to create an entirely new system of law on the subject indicated in the title.

4. An application of these rules to this statute, makes the result inevitable. It will be noticed, that the title is, *"to provide liens for mechanics and material men."* One would say, that mechanics as a class,—those employed in mechanical labors, artisans, artificers,—and material-men, who supply materials such as are used by mechanics in their trade, were the persons to be provided for in the act, and who were referred to in its title. Yet, section 2 provides for the lien for "every mechanic, firm, association, corporation,"—and to be sure to omit no one, there was added,—"or other person," who does what is required to give the lien, whether it is to do or perform any work or labor, or furnish any materials. It thus appears that persons are included in the body of the act, other than those referred to in its caption.

The section then provides, that any of these, "who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler, or machinery for any building, article, improvement or utility on land, or for altering, repairing or beautifying the same, under or by virtue of any contract with the owner or proprietor thereof, &c., shall have a lien therefor on such building, article, improvement or utility, and on the land on which the same is situated." What is meant by *article* on land, perhaps no one but the party who drew the bill can tell with certainty; but it must necessarily mean something on land, for which material, fixtures, engine, boiler or machinery may be furnished.

5. When analyzed for the sake of arriving at the meaning of a sentence somewhat involved and lacking

in clearness, the extract quoted above may be restated as follows : (1.) "Who shall do or perform any work or labor on land ; or, (2.), who shall furnish any material, fixtures, engine, boiler, or machinery for any building, article, improvement or utility on land, or for altering, repairing or beautifying the same, by virtue of any contract with the owner or proprietor thereof, shall have a lien therefor, on such building, article, improvement or utility, and on the land on which the same is situated." So, it is land, or the building, article, improvement, or utility on land, on which labor and work are to be bestowed, and for which the mater al and other things specified in the statute are to be furnished. Who then, besides mechanics and material men, supplying materials used by mechanics, are not included, and for what kind of work or labor on land to make the same useful and ornamental, does the statute not provide? The word utility, is defined to mean, "The state or quality of being useful ; usefulness ; production of good ; advantageousness ; profitableness ; benefit ; service ; profit ; avail."—Worcester's Dictionary. Anything that may be placed on land, which answers this definition of utility the statute is meant to cover. It goes further and extends to the altering, repairing, or beautifying of any building, article, improvement or utility on the land. Among other things, it seems, it may include such improvements as ditching, hedging and fencing, dams and ponds, opening mines and quarries, cultivating crops, planting and tending orchards and graperies, and landscape and flower gardens. In some States, the lien is extended to the persons furnishing labor or materials in construction of the improvements just specified, and to almost every other conceivable fixture, structure, improvement, or utility on land ; and if anything of such character is excluded from the purview of this statute, it is difficult to imagine what it is.—15 Amer. & Eng. Enc. of Law, 29–39. Surely, a legislator sitting by, and hearing the caption of this act read, or the general public, in seeing the legislative proceedings in public prints, would never suspect such an act to follow as we find appended to this title. We do not call in question the right and authority of the legislature to pass an act, when properly drawn, as comprehensive as this one was designed to be, nor its duty to provide the completest

system possible to secure mechanics and material-men a lien for the betterment of the landed possessions of others, for which they have contributed time, labor and material. But, this act is too large for its caption, contains too many things that are not attingent, or cognate to, or even suggested by the title, for it to stand. It must fall under this constitutional prohibition.

6. The act in question, we find, borrows almost litterally many of the provisions of the Minnesota statute, of March 8, 1887, entitled "An act giving labor the right of first lien ; and material furnished a second lien on all property," and which, on many grounds, was declared unconstitutional by the Supreme Court of that State.—*Meyer v. Berlandi*, 39 Minn. 438, s. c. 1 Lawyers' Reports, Annotated, 777.

It is noticeable, that in the adoption of the late statute an attempt was made to avoid the unconstitutional features of the Minnesota act.

In the statute of this State, it is provided in section two of the act, that the persons mentioned therein as having the lien provided, have "a lien for all costs and for an attorney's fee, in the discretion of the court, not to exceed $25."

Section 2 of the Declaration of Rights in the constitution of this State prescribes, that all persons resident in this State, who are citizens, are entitled to possess "equal civil and political rights;" and in section 14, it is provided, "that all courts shall be open ; and that every person for any injury done him in lands, goods, person or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay." It is contended that the act in question violates these provisions of the constitution, in that it allows a fee to the plaintiff's attorney for prosecuting his suit successfully, whereas, a like fee is not allowed the defendant's attorney, in case the plaintiff fails in his suit, and on that account it is discriminative and class legislation. In Michigan, they had a statute similar to the one in hand, which allowed five dollars attorney's fee as part of plaintiff's cost in a log-lien suit. The Supreme Court of that State declared the provision for an attorney's fee to be unconstitutional, holding that all persons have equal rights before the law, which must be administered between them as suitors, with the same

[Randolph v. Builders & Painters Supply Co.]

equality and justice, without which it would become an engine of tyranny. The court, in discussing the question, says: "Calling it an attorney's fee, does not change its real nature and effect. It is a penalty to the company, and a reward to the plaintiff, and an incentive to litigation on his part. This inequality and injustice cannot be sustained upon any principle known to the law. It is repugnant to our form of government, and out of harmony with the genius of our free institutions. The legislature cannot give to one party in litigation such privileges as will arm him with special and important pecuniary advantages over his antagonist." *Chair Co. v. Runnels*, 77 Mich. 105; *Wilson v. Railway Co.*, 70 Mich. 384. The Supreme Court of Wisconsin, discussing the same principle, declares that there can be no discriminative advantages bestowed by law between parties to the same suit, giving one most unjust pecuniary advantages over the other, and employs the following language which is applicable to our case: "Parties thus discriminated against would not obtain justice freely, and without being obliged to purchase it. To the extent of such discrimination they would be obliged to buy justice and pay for it, thus making it a matter of purchase to those who could afford to pay, contrary to the letter and spirit of this provision" of the constitution.—*Durkee v. Janesville*, 28 Wis. 471. Our own court, on the same subject, says: "The clear legal effect of these provisions is to place all persons, natural and corporate, as near as practicable, upon a basis of equality in the enforcement and defense of their rights in courts of justice in this State, except so far as may be otherwise provided in the constitution. * * * Justice cannot be sold, or denied, by the exaction of a pecuniary consideration for its enjoyment from one, when it is given freely and open-handed to another, without money and without price."—*N. & S. A. R. R. Co. v. Morris*, 65 Ala. 199; *Smith v. L. & N. R. R. Co.*, 75 Ala. 451; *L. & N. R. R. Co. v. Baldwin*, 85 Ala. 627; *Brown v. A. G. S. R. R. Co.*, 87 Ala. 370. We are thus led to declare the provision of the statute giving a lien to the plaintiff's attorney unconstitutional and void.

7. The 6th section of the act provides "That the fact the person performing labor or furnishing materials was not notified in writing not to perform such labor or

[Randolph v. Builders & Painters Supply Co.]

furnish such materials, by the person in whom the title was invested, at the time such labor was performed or materials furnished, shall be *prima facie* evidence that it was by and with the consent of the owner that such labor was performed and materials furnished." This is a substantial copy of section 5 of the Minnesota statute of 1887, except that their statute made the failure to enjoin the party not to furnish materials, conclusive evidence that it was done with the consent of the owner. Of this section, the Supreme Court of that State, in *Meyer v. Berlandi, supra,* says: ''Section 5 is also unconstitutional. As liens are an encumbrance upon the owner's property, it is fundamental that they can only be created by his consent or authority. No man can be deprived of his property without his consent, or by due process of law. The basis of the right to enforce a claim, as a lien against property, is the consent of the owner, and it is upon this principle, alone, that laws giving liens to sub-contractors are sustained. The contract of the owner with the contractor is, under the law, the evidence of the authority of the latter to charge the property with liabilities incurred by him in performing his contract." *O'Neil v. St. Olaf,* 26 Minn. 329; *Laird v. Moonan,* 32 Minn. 358; *Eufaula Water Co. v. Pipe Works,* 89 Ala. 555; *Copeland v. Kehoe,* 67 Ala. 597. It is not denied, the legislature may establish proper rules of evidence, but not to the extent of depriving one of his property without due proces of law; nor is it denied, that the owner's contract is made under and subject to the provisions of the existing lien law, provided these provisions do not infringe his constitutional rights. But, suppose the owner contracts with another to erect a house, or to do any of the many things for which a lien is given under section two of this act, and he has paid, as required by section two and half, and the work is not completed, and the contractor who is still under obligation to complete the work, and is liable for not doing so, goes forward to complete it, with labor and materials provided on his own responsibility, without the procurement of the owner, or his having in any way obligated himself for it, having performed his entire obligation under the law to the contractor, sub-contractors and material-men, can it be maintained on any principle of right guaranteed to us, that the owner shall be held liable, without his

own consent, for all that is done by the contractor in the completion of his contract? Is he required to notify sub-contractors and material-men in writing, not to come on his premises, and not to aid the contractor in performing his duty? How could he even hold his contractor liable for a breach of his contract, when the latter was able and willing, even, to perform it, if he should notify the contractor's laborers and material-men "in writing not to perform such labor or furnish such materials"? The section goes too far. It overreaches itself, in an effort to protect the sub-contractor and material-men, at the expense of the owner, and gives them an advantage over him, which is not right or mutual. While the owner should be just towards such parties, they ought to be just to him. The law should not constitute him their guardian, without their request, and hold him liable for things he never engaged to become responsible for by contract, express or implied, in any just or fair sense.

8. The question now presents itself, when parts of a statute have been declared inoperative, and other parts are alien to the subject described in the title, if these facts vitiate the whole law, or only affect the invalid and incongruous matter. It is well understood that parts of a statute may be unconstitutional, and the other parts not subject to such infirmity. The latter, if divisible from the other, and can stand and have effect without the former, will be allowed to do so. And the same thing is true of those matters in the body of the act not embraced in the title. Or as we have elsewhere expressed the same principle : "It does not matter that the objectionable and valid parts of the statute are in the same section of the act. If they are perfectly distinct and separable, and are not dependent, the one on the other, the courts will permit the one part to stand, though the other may be expunged as unconstitutional, *provided effect can be given to the legislative intent.* But, where the provisions are all connected in subject matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it could not be presumed the legislature would have passed the one without the other, the constitutional invalidity of the one part will vitiate the other, and both must fall together.—*Powell v. the State,* 69 Ala.

13; *S. & N. A. R. R. Co. v. Morris*, 65 Ala. 198; *Stewart v. County Coms.*, 82 Ala. 209; *Elsberry v. Seay*, 83 Ala. 614; *Collins v. The State*, 88 Ala. 212; *Lowndes Co. v. Hunter*, 49 Ala. 509; *Allen v. Louisiana*, 103 U. S. 80; Cooley's Const. Lim., 177-78.

When we come, then, to separate the good from the bad in this statute, we are met by many perplexing difficulties, so serious as to leave no room to sustain any part of it, consistent with legislative intent in its adoption.

9. From what has gone before, it is palpably manifest that the legislature did not intend to enact a law which would restrict and curtail the numerous persons who may do or perform any work or labor on, or furnish any materials for, the different purposes specified in the original act, and be entitled to its benefits, or to curtail the different subjects of lien, but in each, as is obvious, the intention was to enlarge and extend rights and remedies. If the act is restricted in its operation to those designated in its caption, the number of each class to be benefitted by its provisions is greatly diminished, and to such extent, we cannot presume the legislature would ever have passed the statute, if they had known, that on account of constitutional defects, they were enacting a law less extended and beneficial and more incomplete than the one already in existence, and which itself fell so far short of what was their evident purpose to accomplish.—*Meyer v. Berlandi*, 39 Minn. 438.

10. This statute having been declared void, what effect does it have, as a repealing statute, on the sections of the Code which it attempted to repeal? It has been said that, ''Where a repeal of prior laws is inserted in an act, in order to the unobstructed operation of such act, and it is held unconstitutional, the incidental provision for the repeal of prior laws will fall with it.''— Sutherland on Stat. Const.. § 175. There was no intention on the part of the legislature to repeal any part of the old law, except to the extent it replaced it by what was supposed to be a valid amendment. No part of it, it must be presumed, was intended to stand, except as a component part of the whole. It would, indeed, do violence to the legislative intent, to presume they intended to repeal the mechanic's lien law entirely in this State, if the legislation they were adopting with

the view of perfecting it, and making it better, failed because of constitutional infirmity.

It is not denied, that it is competent for the legislature, in the same act to repeal any former act, though every other clause in the repealing act may be unconstitutional; yet, "if the sections of the repealing act are so mutually dependent on, and connected with, each other as conditions, considerations and compensations for each other, as to warrant the belief that the legislature intended them for one law and to operate as a whole, and that if all could not be carried into effect, it would not have passed the repealing part independently, the whole act must fall together."—*Warner v. Mayor*, 2 Gray, 99. It was held by the Indiana court, that where it is not clear that the legislature intended to repeal the prior law, without regard to the new provisions to be substituted for it, a repealing clause in an unconstitutional statute will be ineffective. Especially would this be true, when, if the repeals in the act were allowed to stand, it would destroy the system of laws, as it would in this case, which the legislature was intending and attempting to perfect by amendment, and leave us without any mechanics' lien law at all.—*State v. Bland*, 121 Ind. 514; *State v. Van Cliff*, 38 N. J. Law 322; *Quinlan v. Rogers*, 12 Mich. 168; *Childs v. Shower*, 18 Iowa, 261; *In re Rafferty*, 1 Wash. 383; *Tims v. State*, 26 Ala. 165; *Tenn. & C. R. R. Co. v. Moore*, 36 Ala. 389; Sutherland on Stat. Const., § 175; Cooley's Const. Lim., 220.

11. This view of the case leaves the law providing liens for mechanics and material-men, as found in Ch. 3, Tit. 2, Pt. 3 of the Code of 1886, in full force and effect, untouched by any of the provisions of the said act adopted February 12, 1891, herein declared unconstitutional and void. The bill in this case was filed to enforce a lien under and according to the provisions of said last named act, and was subject to the demurrer interposed. It may be that it can be amended and maintained under the provisions of the Code.

Other provisions of the act in question were also assailed for constitutional infirmities, but it is unnecessary to pass on these.

It may be well to add, that the General Assembly, at its last session, repealed the law just declared unconstitutional, and with some slight amendments have

restored the law of the Code.— Acts 1894–95, p. 1238.
Reversed and remanded.