THE PEOPLE OF THE STATE OF NEW YORK ex rel. IRVING K. FARRINGTON, Appellant, *v.* LOUIS MENSCHING, a Peace Officer of the County of New York, Respondent.

1. CONSTITUTIONAL LAW — STOCK TRANSFER TAX ACT (L., 1906, CH. 414, § 1) INVALID AS AN ARBITRARY DISCRIMINATION IN FAVOR OF ONE AS AGAINST ANOTHER OF THE SAME CLASS.    Section 1 of chapter 414 of the Laws of 1906, which purported to amend the Stock Transfer Tax Act (section 315 of the Tax Law, as amended by chapter 241 of the Laws of 1905), and imposes a tax of two cents " on each share of one hundred dollars of face value or fraction thereof," instead of " on each hundred dollars of face value or fraction thereof," as provided by the act of 1905, taxes the sale of all shares of the face value of one hundred dollars and also all shares of the face value of any fraction of one hundred dollars; the tax is measured by the number of shares regardless of face value, instead of by the face value of the shares sold, *i. e.*, the sale of one hundred shares of the face value of ten dollars is taxed two dollars, while the sale of ten shares of the face value of one hundred dollars is taxed twenty cents, the shares sold in each case being worth the same amount.    All corporate shares are placed in a class, but all members of the class are not treated alike; without method or order or reason the statute bears heavily upon some and lightly upon others in the same situation.    This is not classification but arbitrary or accidental selection.    While the legislature has wide latitude in classification, its power in that regard is not without limitation, for the classification must have some basis, reasonable or unreasonable, other than mere accident, whim or caprice.    The taxing clause of the act of 1906 must be regarded as an arbitrary discrimination in favor of one as against another of the same class, is a violation of primary rights and as such it is unconstitutional and void.

2. STOCK TRANSFER TAX ACT (TAX LAW, § 315; AMD. BY L. 1905, CH. 241) NOT AFFECTED BY UNCONSTITUTIONALITY OF ACT OF 1906. A contention that although the amendment is void, it may be regarded as valid for the purpose of substitution or repeal cannot be sustained. A valid statute cannot be annulled by a void amendment. A statute is never repealed by 'implication when a provision of a later act which would otherwise effect a repeal is unconstitutional and void. The taxing clause of the act of 1906 being unconstitutional, the taxing clause of the act of 1905, which it purported to amend, was not repealed, modified or in, any way affected.

3. VALIDITY OF WARRANT OF ARREST CHARGING VIOLATION OF STATUTE. A warrant of arrest charging the relator in habeas corpus proceedings with his failure to affix any stamp or pay any tax upon a sale of stock certificates by him, "in violation of chapter 241 of the Laws of 1905, as amended by chapter 414 of the Laws of 1906," is valid, although it recites the void statute, where the relator attacks the latter as void, and he is presumed to have known that, if void, the former statute must be operative, and hence he could not be misled. Especially is this true in this case, since the act of 1906 was not altogether void. Section 2 thereof amended section 317 of the act of 1905, relating to the penalty for a failure to pay the tax, and the warrant does not refer to the section violated, but to that part of the act which was valid.

*People ex rel. Farrington* v. *Mensching,* 115 App. Div. 893, affirmed.

(Argued November 19, 1906; decided January 8, 1907.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered October 19, 1906, which affirmed an order of Special Term, dismissing a writ of habeas corpus.

On the first of August, 1906, the relator was arrested by the respondent under a criminal warrant, which charged that " on the 26th day of July, 1906, at the city of New York, in the county of New York, one Irving K. Farrington did sell and deliver to Donald C. Catlin certificates of stock without making any memorandum of sale and without affixing any stamp or stamps and without the payment of any tax in violation of chapter 241 of the Laws of 1905, as amended by chapter 414 of the Laws of 1906." The affidavit upon which the warrant was issued was made by Donald C. Catlin, who alleged that he resided in the city of New York; that he was a broker by occupation and had an office on Wall street

in that city; that on the 26th of July, 1906, the relator, a
resident of the state of New Jersey, sold to him in the
borough of Manhattan the following shares of stock, to wit:
" A certificate for 1,000 shares of the capital stock of The
Old Gold Mines Company, a corporation organized and exist-
ing under and by virtue of the Laws of the State of Wyoming;
that the par value of said stock is one cent ($.01) per share;
that said stock was so issued by said company under and pur-
suant to the Laws of the said State of Wyoming; and that
the sale thereof by said Farrington to deponent was for the
sum of thirty ($30) dollars in cash, at the rate of three cents
($.03) per share, that being the then market value of said
stock and to the best of deponent's knowledge, information
and belief the actual value thereof.

" A certificate for 1,500 shares of the capital stock of the
Black Butte Mining Company, a mining corporation organ-
ized and existing under and by virtue of the laws of the State
of Maine; that the par value of said stock is ten cents per
share; that the said stock was so issued by said company under
and pursuant to the Laws of said State of Maine; and that
the sale thereof by said Farrington to deponent was for the
sum of $105 in cash, at the rate of seven cents ($.07) per
share, that being the then market value of said stock and to
the best of deponent's knowledge, information and belief the
actual value thereof.

" A certificate for 1,000 shares of the capital stock of the
Goldfield Blue Bell Mining Company, a mining corporation
organized and existing under and by virtue of the Laws of the
Territory of Arizona; that the par value of said stock is one
($1) dollar per share; that said stock was so issued by said
company under and pursuant to the Laws of the Territory of
Arizona; and that the sale thereof by said Farrington to
deponent was for the sum of twenty ($20) dollars in cash, at
the rate of two cents ($.02) per share, that being the then
market value of said stock and to the best of deponent's
knowledge, information and belief the actual value thereof.

" A certificate of 1,000 shares of the capital stock of The

Mergenthaler-Horton Basket-Machine Co., a corporation organized and existing under and by virtue of the Laws of the State of Maine; that the par value of said stock is one ($1) dollar per share; that said stock was so issued by said company under and pursuant to the Laws of said State of Maine; and that the sale thereof by said Farrington to deponent was for the sum of one hundred and forty ($140) dollars in cash, at the rate of fourteen cents ($.14) per share, that being the then market value of said stock and to the best of deponent's knowledge, information and belief the actual value thereof; that said corporation is engaged in the business of manufacturing fruit baskets and other baskets."

The complainant further alleged that, pursuant to such sale, he paid the relator the sum of $295, the total purchase price of such shares, and that the latter delivered to him certificates representing the same, but without affixing ."any stamp or stamps and without paying any tax on making said sale or sales and delivery, although requested by the deponent so to do, in violation of the provisions of" said act of 1905, as amended by said act of 1906.

The relator alleged in his petition for the writ that he was restrained of his liberty by the respondent under said warrant issued upon said affidavit, and that his detention was illegal, because the magistrate was without jurisdiction to issue the warrant or cause his arrest, inasmuch as chapter 414 of the Laws of 1906 is unconstitutional, and also because said act does not apply " to the transfer of shares of stock whose par value is less than $100." The return of the respondent was in substance that he had arrested and detained the relator by virtue of .the warrant issued upon said affidavit, and "that further than this there is no cause or reason for the detention of the relator known to me." On the second of August, 1906, the Supreme Court at Special Term dismissed the writ and remanded the relator to custody. Upon appeal to the Appellate Division the order dismissing the writ was unanimously affirmed, and thereupon the relator appealed to this court.

*Horace E. Parker* for appellant. The statute is in violation of section 1 of article 14 of amendments of the Constitution of the United States, in that it denies to the petitioner within the jurisdiction of the state of New York and to other persons in said jurisdiction in like circumstances the equal protection of the laws in that those desiring to exercise their inherent, inalienable rights and privileges to contract for the purchase and sale of stocks of a low par value is taken away; and traders in stocks having a low par value are charged a larger percentage than those dealing in stocks of a par value of $100. (*Matter of Pell*, 171 N. Y. 48; Cooley on Taxn. 596; *People ex rel. Hatch* v. *Reardon*, 184 N. Y. 431; *Pollock* v. *F. L. & T. Co.*, 157 U. S. 429; *Barbier* v. *Connolly*, 113 U. S. 27; *B. G. R. R. Co.* v. *Penn.*, 134 U. S. 232; *M. C. R. R. Co.* v. *Powers*, 201 U. S. 245; *Kentucky R. R. Cases*, 115 U. S. 321; *Magoun* v. *I. T., etc., Bank*, 170 U. S. 283; *A. P. Co.* v. *Lacy*, 200 U. S. 226; *Nicol* v. *Ames*, 173 U. S. 509.) The act may be construed as providing for a tax only in respect of shares of stock the par value of which is $100. (*Matter of McPherson*, 104 N. Y. 306; *Matter of Romaine*, 127 N. Y. 80; *Matter of Enston*, 113 N. Y. 134; *Whitfield* v. *Æ. L. Ins. Co.*, 144 Fed. Rep. 356.)

*Louis Marshall* for the New York State Brokers' Association, intervenors. If the act of 1906 is applicable to transfers of shares having a par value of less than $100, the act is unconstitutional, in that it denies to the transferrors of such stock the equal protection of the law within the meaning of the fourteenth amendment of the Constitution of the United States. While it is undoubtedly within the legislative power to classify the subjects of legislation, such classification cannot be predicated upon the exercise of arbitrary and capricious power over persons and property. The classification must be such as in the nature of things suggests and furnishes a reason and justifies the making of the class. The reason must inhere in the subject-matter, and must be natural

and not artificial.   Neither mere isolation nor arbitrary selection is proper classification.   (*G., C. & S. F. Ry. Co.* v. *Ellis,* 165 U. S. 150; *Cotting* v. *K. C. S. Co.,* 183 U. S. 79; *Connolly* v. *U. S. P. Co.,* 184 U. S. 540; *Matter of Pell,* 171 N. Y. 48; *People* v. *O. C. R. C. Co.,* 175 N. Y. 84; *Ruhstrat* v. *People,* 185 Ill. 183; *People ex rel. McPike* v. *Van De Carr,* 91 App. Div. 20; 178 N. Y. 425; *Wright* v. *Hart,* 182 N. Y. 330; *People* v. *Beattie,* 96 App. Div. 383; *People ex rel. Appel* v. *Zimmerman,* 102 App. Div. 103.)   Assuming, however, that the act of 1906, is constitutional, then under the rules applicable to the interpretation of fiscal legislation, which is highly penal in its scope, the words "or fraction thereof," as contained in the act of 1906, must be construed as referring to the antecedent unit of taxation, to wit, each share of stock having a face value of $100, and not to any other shares.   (Maxwell on Interp. of Stat. [3d ed.] 401; *Partington* v. *Attorney-General,* L. R. [4 H. L.] 122; *Matter of Thorley,* L. R. [2 Ch. Div. 1891] 613; *Shaw* v. *Ruddin,* 9 Ir. C. L. 214; *Queen* v. *Mallow Union,* 12 Ir. C. L. 35; *Cox* v. *Rabbits,* L. R. [3 App. Cas.] 473; *Oriental Bank* v. *Wright,* L. R. [5 App. Cas.] 842; *United States* v. *Wigglesworth,* 2 Story, 669; *United States* v. *Watts,* 1 Bond, 580; *Powers* v. *Barney,* 5 Blatch. 202; *United States* v. *Isham,* 17 Wall. 496.)   If section 1 of chapter 414 of the Laws of 1906 is unconstitutional and void, then section 315 of the Tax Law as enacted by chapter 241 of the Laws of 1905, is left in full force.   (*Campau* v. *Detroit,* 14 Mich. 276; *Devoy* v. *Mayor, etc.,* 35 Barb. 264; 36 N. Y. 449; *Harbeck* v. *Mayor, etc.,* 10 Bosw. 366; *People* v. *Tiphaine,* 3 Park. 241; *Matter of Cullinan,* 97 App. Div. 122; *W. P. O. Co.* v. *Texas,* 177 U. S. 28; *Sullivan* v. *Adams,* 3 Gray, 476; *Judson* v. *City of Bessemer,* 87 Ala. 240; *Randolph* v. *B. P. S. Co.,* 106 Ala. 501; *People* v. *B. S. F. & I. Co.,* 201 Ill. 236.)   Assuming that section 315 of the Tax Law of 1905 was in effect at the time of the act for which the relator was arrested, the affidavit and warrant do not sufficiently charge an offense against the provisions of

14    People ex rel. Farrington *v.* Mensching.    [Jan.,

Points of counsel.      [Vol. 187.

that act, since it was evident that the crime charged was a violation of the act of 1906, the reference to the statute being a material part of the charge. (*People* v. *Harris*, 28 N. Y. S. R. 300; *People* v. *Dumar*, 106 N. Y. 502; *People* v. *Klipel*, 160 N. Y. 374; *People* v. *Flaherty*, 162 N. Y. 542; 1 Bishop's New Cr. Proc. [4th ed.] § 602; *United States* v. *Smith*, 2 Mason, 143; *Green* v. *City of Indianapolis*, 25 Ind. 490; *McCulloch* v. *Comm.*, 3 Ky. 95; *Comm.* v. *Macuboy* 33 Ky. 70; *Pike* v. *Comm.*, 63 Ky. 89; *State* v. *Sherburne*, 58 N. H. 159.)

*William Travers Jerome, District Attorney* (*E. Crosby Kindleberger* of counsel), for respondent. The change made by the act of 1906 is a change only in the measure of the tax, not a change in the method or principle of taxation. The amendment, therefore, even if different from the act of 1905, by broadening the scope of the act makes it less liable to criticism as being designed to tax the transfer of but a small part of the personal property of the state. By extending the property included within its power to that extent it destroys the objections that it is denying the equal protection of the law. (*People ex rel. Hatch* v. *Reardon*, 184 N. Y. 431; *M. C. R. R. Co.* v. *Powers*, 201 U. S. 245; *Clark* v. *Titusville*, 184 U. S. 329; *B. G. R. R. Co.* v. *Penn.*, 134 U. S. 232; *Jennings* v. *C. R. I. Co.*, 147 U. S. 147; *M. & M. Bank* v. *Penn.*, 167 U. S. 461; *U. S.* v. *Thomas*, 115 Fed. Rep. 207.) By failing to pay any tax whatever the relator has violated the act of 1905, and his arrest was lawful without regard to the act of 1906. (*People ex rel. Hatch* v. *Reardon*, 184 N. Y. 431.)

*Julius M. Mayer, Attorney-General* (*Horace McGuire* of counsel), for respondent. The act does not confiscate the property of the relator; it does not deprive him of his property without due process of law, and it does not deny to him equal protection of the laws. (*People ex rel. Hatch* v. *Reardon*, 184 N. Y. 431; *Matter of McPherson*, 104 N. Y. 306.)

Vann, J.   The Tax Law, as amended by chapter 241 of the Laws of 1905, imposed a tax " on all sales, or agreements to sell, or memoranda of sales or deliveries or transfers of shares or certificates of stock in any domestic or foreign association, company or corporation, made after the first day of June, 1905," of two cents " on each hundred dollars of face value or fraction thereof." (§ 315.)

By chapter 414 of the Laws of 1906, section 315 was amended " to read as follows," that is, the original section was repeated in *hæc verba*, except that the words " share of one " were inserted in the taxing clause, so as to impose a tax " on each *share of one* hundred dollars of face value or fraction thereof," instead of on " each hundred dollars of face value or fraction thereof." There was no repealing clause, general or special, and the original section was left unchanged except as stated and except also that two unimportant verbal changes were made and the following sentence was added at the end of the section : " The comptroller may, upon satisfactory proof that stamps have been erroneously affixed and cancelled in payment of the tax upon a transfer and to the loss of an innocent person, refund the amount thereof from appropriations made for necessary expenses under this act, provided the tax justly due is paid upon such transfers." Section 317, relating to the " penalty for failure to pay taxes," and section 321, relating to the " power of State comptroller," were also amended, but not so as to have any material bearing upon the questions discussed in this opinion. The amended act " became a law " on the 11th of May, 1906, and took effect immediately.

What did the legislature mean by imposing the tax " on each share of one hundred dollars of face value or fraction thereof ? " Do the words " fraction thereof " qualify the word " share," or the words " one hundred dollars ? " Does the fraction relate to the " share " or to the amount ? Does the section have the same meaning as if it read " on each share of the face value of one hundred dollars, and on each share of the face value of a fraction of one hundred dollars,"

or as if it read "on each share of the face value of one hundred dollars and on any fraction of a share?"

We think the intention was to tax the sale of all shares of the face value of one hundred dollars, and also all shares of the face value of any fraction of one hundred dollars. The structure of the sentence indicates a change in the unit of taxation from a certain amount of face value to a share, whether large or small. The theory that the legislature intended to tax shares of the face value of one hundred dollars and leave all others untaxed, although plausible, impresses us as unsound. This would exempt shares with a face value of $99 and less, and $101 and more, including those with a face value of $5,000, of which we recently had an instance before us. (*Matter of Brandreth*, 169 N. Y. 437, 439.) According to the record "not less than five million shares of stock" with a face value of less than one hundred dollars a share are sold each year within the county of New York, and the number of corporations issuing the same exceeds two thousand.

Either construction, however, raises the question as to the power of the legislature to make a classification so purely arbitrary as to have no reason, not even an insufficient or merely plausible reason to justify it.

We adhere without qualification to the decision made when the act of 1905 was before us and broadly indorse the reasons given to support the judgment then rendered. (*People ex rel. Hatch* v. *Reardon*, 184 N. Y. 431.) We held that "The legislature has power to classify as it sees fit by imposing a heavy burden on one class of property and no burden at all upon others," provided "all persons and property in the same class are treated alike" and "the tax is imposed equally upon all property of the class to which it belongs." In discussing the subject we said that: "While a tax upon a particular house or horse, or the houses or horses of a particular man, or on the sale thereof would obviously invade a constitutional right, still a tax upon all houses, leaving barns and business buildings untaxed, or upon all horses or the sale thereof, leav-

ing sheep and cows untaxed, however unwise, would be within the power of the legislature. \* \* \* The equal protection of the laws ' only requires the same means and methods to be applied impartially to all the constituents of each class, so that the laws shall operate equally and uniformly upon all persons in similar circumstances.' (*Kentucky Railroad Tax Cases*, 115 U. S. 321, 337.) Or, in other words, all persons must ' be treated alike under like circumstances and conditions, both in the privilege conferred and the liabilities imposed.' (*Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283, 293; *Hayes* v. *Missouri*, 120 U. S. 68; *Barbier* v. *Connolly*, 113 U. S. 27, 32.)"

The act of 1905, to which these remarks applied, made no discrimination between the shares of different corporations founded on the accident of the amount for which they were issued, but taxed on the basis of a uniform amount of face value as the standard. The tax was measured by one hundred dollars of face value, ascertained by counting the shares, if issued for exactly that amount; by dividing each share into multiples of one hundred dollars, if issued for more, and by adding the face values and dividing the result into multiples of that sum, if issued for less.

The act now before us does not classify by arranging according to quality, but by arranging according to accident. While it places all corporate shares in a class, still it does not treat all members of the class alike, but without method or order bears heavily upon some and lightly upon others, which, in effect, is a further classification. Thus it imposes the same tax on the sale of dollar shares and hundred dollar shares. The tax is measured by the number of shares, regardless of face value or actual value. Shares of the same corporation might be taxed ten times as much, or only one-tenth as much, in one year as compared with the next, if simply the face value of each share were changed, without changing the aggregate of the face value of all the shares, or the amount of capital invested, or the value of the assets in which it was invested. Shares are so classified as to tax the sale of those

2·

issued by one corporation several times as much as those issued by another of the same kind and in exactly the same situation, without any reason for the distinction. Possibly a valid distinction might be founded on the nature or object of the corporation, or on the fact that it enjoyed special privileges, putting banking and railroad corporations in and leaving manufacturing corporations out, for instance, but we think none can rest on an accidental and non-essential quality without the violation of fundamental principles. While the legislature has wide latitude in classification its power in that regard is not without limitation, for the classification must have some basis, reasonable or unreasonable, other than mere accident, whim or caprice. There must be some support of taste, policy, difference of situation or the like, some reason for it even if it is a poor one. While the state can tax some occupations and omit others, can it tax only such members of a calling as have blue eyes or black hair? We have said that it could tax horses and leave sheep untaxed, but it does not follow that it could tax white horses and omit all others, or tax the sale of certificates printed on white paper and not those on yellow or brown. While one class may be made of horses and another of sheep, or even a class made of race horses, owing to the use made of them, without a shock to common sense, a classification limited to white horses would be so arbitrary as to amount to tyranny, because there would be no semblance of reason for it. A reason might be advanced, although specious and unsound, for taxing Holstein bulls and no others, but could even a sophist argue in favor of taxing Holstein steers and no others, since they are incapable of reproduction? A classification of dealers in cigarettes into those selling at wholesale without the state and those selling at retail within the state was sustained on the ground that the two occupations are distinct (*Cook* v. *Marshall County*, 196 U. S. 261, 274), but could dealers in any commodity be classified according to age, size or complexion. A classification of sales into those made in an exchange and those made elsewhere was sustained in another case, but could

exchanges be so classified as to tax only such sales as are made in those carried on in brick buildings ?    (*Nicol* v. *Ames*, 173 U. S. 509.)    Perhaps an answer to these questions may be found in *Cotting* v. *Kansas City Stock Yard Co.* (183 U. S. 79), where a general act, the effect of which was to so classify stockyards in the state of Kansas as to discriminate against the largest stockyard in the state, but without mentioning it by name, was held to be unconstitutional because it denied to that company the equal protection of the laws.    A similar fate met an act of another state, which provided that a certain tax should be imposed only upon those taxable inhabitants of a school district who had not paid a tax assessment in the year 1871. (*State ex rel. Trustees* v. *Township, etc.*, 36 N. J. Law, 66.) Even if a tax on farms according to acreage might be sustained, it is obvious that a tax on farms according to the number of fields into which they are divided would not be valid.    Such a classification would not treat all in the same class alike, and would impose a heavier burden upon one farm than upon another of the same size, situation and value.    A statute imposing such a tax would not give " that equal protection and security " to which all, under like circumstances, are entitled " in the enjoyment of their personal and civil rights."    (*Barbier* v. *Connolly*, 113 U. S. 27 ; *Matter of Jacobs*, 98 N. Y. 98 ; *People* v. *Marx*, 99 N. Y. 377.)

By the statute before us the tax is laid upon sales, and the class of sales taxed consists of corporate shares, but all members of the class are not treated alike, since one is taxed many times as much as another, although worth no more. Two corporations may be doing the same kind of business upon the same amount of capital, with assets of the same value, and shares aggregating the same face value, but if a share in one has but half the face value of a share in the other, still the sale of the same number of shares in each would be taxed the same amount, in manifest disregard of justice and principle.    The same person may own one-tenth of all the shares of both, yet on the sale of all his stock in both, his tax on the one would be twice that upon the other,

although his proportionate ownership of the property of the corporation would be the same in each. While the sale of all shares is taxed an equal amount per share, the tax is unequal when the shares are issued for different amounts and the record shows a wide range in that respect. The Business Corporations Law requires shares to be not less than $5 and not more than $100 each. (L. 1890, ch. 567, § 2.) Other corporations do not appear to be limited in this regard. Perhaps a face value of one hundred dollars is the most common, but shares of fifty dollars are not unusual and shares of more than one hundred dollars are occasionally issued. In mining stocks, the shares generally range from one dollar to ten. According to the petition upon which the writ before us was issued, they are sometimes as low as ten cents and even down to one cent, although the amount last named suggests an attempt to make a case for the purpose of overthrowing the statute, which would ordinarily lead us to dismiss the appeal and leave the appellant to a review after a trial when the facts could be fully developed, but the importance to the state and to business men of a prompt decision induces us to decide the question at once. (*Riggins* v. *United States,* 199 U. S. 547; *New York* v. *Eno,* 155 U. S. 89; *In re Wood,* 140 U. S. 278; *In re Duncan,* 139 U. S. 449; *Ex parte Royall,* 117 U. S. 241.)

The serious objection to the statute under consideration is not that in some abnormal instance of low face value the tax might amount to confiscation, but that the classification is as purely arbitrary as the division of land into fields to which we have alluded. Granting the almost unlimited power of the legislature to classify as it sees fit, still there is no plausible or possible reason why one hundred acres in a single field should not pay the same tax as one hundred acres of equal value in ten fields. It seems equally clear that no distinction in liability to taxation can be drawn between ten shares of the face value of one hundred dollars each and one hundred shares of the face value of ten dollars each. If the corporations have equal assets and are equally successful, the two

1907.] People ex rel. Farrington *v.* Mensching. 21

N. Y. Rep.]        Opinion of the Court, per Vann, J.

lots of shares are exactly the same thing. Suppose the entire capital is one hundred thousand dollars, ten shares of one hundred dollars each, or one hundred shares of ten dollars each, would represent the same proportion of the corporate property. In other words the fraction representing the equitable ownership would be exactly the same in each case.

While it is true that the face value, which in multiples of one hundred dollars we held in the *Hatch* case to be a proper basis of classification, does not necessarily indicate actual value, still it bears some relation thereto, but a share apart from its size or face value can bear no relation whatever to its actual value. The classification was arbitrary, which "can never be justified by calling it classification." (*Gulf, Colorado & Santa Fé Railway Co.* v. *Ellis,* 165 U. S. 150.) There was no basis for the distinction made, no difference bearing even a colorable relation to the classification attempted. (*Matter of Pell,* 171 N. Y. 48 ; *People* v. *Orange County Road Constr. Co.,* 175 N. Y. 84, 89 ; Cooley on Taxation, 596.) The owners of corporate stocks do not stand on an equal footing under the statute. They do not receive the equal protection thereof, for some have to pay more than others in the same situation. Thus, if A. sells one hundred shares of the face value of $10 each for $1,000, he is taxed $2 ; while B., who sells ten shares of the face value of $100 each for $1,000, is taxed twenty cents, the thing sold in each case being worth the same amount. This is not classification but arbitrary or accidental selection. The statute breaks into the class, and with eyes shut strikes some and lets others go. The rule governing the subject, as laid down by the Supreme Court of the United States, is that there must be " some difference which bears a reasonable and proper relation to the attempted classification." It cannot be "mere arbitrary selection." (*Kentucky R. R. Tax Cases,* 115 U. S. 321, 337 ; *Yick Wo* v. *Hopkins,* 118 U. S. 356 ; *Gulf, Colorado & Santa Fé Ry.* v. *Ellis, supra;* *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, 294 ; *Bells Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232 ; *Nicol* v. *Ames,* 173 U. S. 509, 521 ; *Cotting* v. *Kansas City*

*Stock Yards Co.*, 183 U. S. 79, 111; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 560; *Michigan Central R. R. Co.* v. *Powers*, 201 U. S. 245, 293.)

By this we do not understand that great court to mean that the relation must necessarily be "reasonable and proper" according to the judgment of reviewing judges, but that the court must be able to see that legislators could regard it as reasonable and proper without doing violence to common sense. In other words, there must be enough reason for it to support an argument, even if the reason is unsound. At all events that is as far as it is necessary for us to go in this case, where no reason whatever can be seen for selecting certain individuals of a class and taxing them more heavily than others in the same situation. We regard this as an arbitrary "discrimination in favor of one as against another of the same class," and as a violation of primary rights. We are thus compelled to hold that the amendment of the taxing clause in section 315, as enacted by chapter 414 of the Laws of 1906, is unconstitutional.

As the taxing clause of the last act is void, what effect does it have on the taxing clause in the first act? Can a valid statute be annulled by a void amendment?

A section in a later act amending a section in an earlier act, "so as to read as follows," if followed by a blank space only, would effect no change in the law. That is the legal effect of the situation before us, so far as the question now involved is concerned. The section of 1906 is void, at least in the respect mentioned, and a void thing is no thing. It changes nothing and does nothing. It has no power to coerce or release. It has no effect whatever. In the eye of the law it is merely a blank, the same as if the types had not reached the paper. It neither repealed nor substituted, for as it is void it could do neither. It is folly to argue as to the intent of a section which the Constitution blotted out the instant that the rest of the statute became a law. It never came into existence so as to have an intention. "An unconstitutional act is not a law; it confers no rights; it imposes no duties;

it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." (*Norton* v. *Shelby County*, 118 U. S. 425, 442.)

The main argument of the appellant is founded on the theory that the section, although void because it violates the Constitution, is valid for the purpose of substitution or repeal, whereas it is valid for no purpose whatever. We assume that the later section, if valid, would do away with the earlier, either by implied repeal or by substitution, which is an implied repeal and something more, but as it is void the command of the legislature was neutralized by the command of the Constitution, *eo instante*. The new section never breathed. Instead of blotting out the earlier it was blotted out itself. Instead of amending "so as to read as follows" it did not amend in any respect. Conceding that the two sections cannot stand together, still the earlier is the only one that ever stood at all.

There was no express repeal of the act of 1905 or any part thereof. The two acts were enacted by different legislatures and, therefore, it "cannot be said that the original act would not have been passed except for the amendment." (*Ex parte Davis*, 21 Fed. Rep. 396.) The general rule is that a statute is never repealed by implication when a provision of a later act which otherwise would effect a repeal is unconstitutional and void. (*Devoy* v. *Mayor, etc., of New York*, 35 Barb. 264, 270; 36 N. Y. 449, 451; *Hasbeck* v. *Mayor*, 10 Bosw. 366; *People* v. *Dooley*, 171 N. Y. 74; *Campau* v. *Detroit*, 14 Mich. 276; *Sullivan* v. *Adams*, 3 Gray, 476; *Randolph* v. *Builders & P. Supply Co.*, 106 Ala. 501; *State ex rel. Wilmot* v. *Buckley*, 60 Ohio St. 273; *State ex rel. Law* v. *Blend*, 121 Ind. 514; *State ex rel. Rogers* v. *County Court*, 11 Wis. 50; *Childs* v. *Shower*, 18 Ia. 261; Endlich's Interpretation of Statutes, § 195; Sedgwick's Stat. & Cons. Law, 110, n.; 26 Am. & Eng. Encyc. [2nd ed.] 712, 719, 723; Cooley's Const. Lim. 259; Sutherland on Stat. Cons. § 175.)

An earlier case in Indiana (*Meshmeier* v. *State*, 11 Ind. 482) was overruled by *State ex rel. Law* v. *Blend* (*supra*) which holds that where it is not clear that the legislature, by a repealing clause attached to an unconstitutional act, intended to repeal

the former statute upon the same subject, except upon the supposition that the new act would take the place of the old one, the repealing clause, even when express in terms, falls with the act of which it is a part. In the later case the repeal was in form of "all laws and parts of laws coming in conflict with this act" as well as a specific repeal of an act named. (L. 1889, Indiana, ch. 112.)

As was said by the Supreme Court of Illinois with reference to an attempted amendment of the Anti-trust Law of that state : "The amendment of 1897 does not, in terms, repeal section one of the statute of 1891. If any part of the Act of 1891 is repealed, it must be a repeal by implication and because the amendment is in conflict with the original act or a part thereof. But the amendment is unconstitutional and void. It, therefore, repealed no part of the act upon which it was fruitlessly sought to be engrafted as an amendment." (*People ex rel. Akin* v. *Butler Street Foundry & Iron Co.*, 201 Ill. 236.)

The Supreme Court of Michigan, after holding that a later act purporting to amend an earlier was unconstitutional, through Judge COOLEY said : "The Act of 1865 (the later) contains many other provisions, the validity of which is not disputed so far as we are informed, and the last section repeals all acts and parts of acts inconsistent with its provisions. The plaintiff in error contends that, even if the sections which relate to a jury are invalid, the last section must still have the effect to repeal the original section. If the repealing clause had in express terms repealed certain acts and parts of acts by name and the act had then gone further and attempted to substitute unconstitutional provisions, the argument which has been made would be more plausible than it seems to us now. But the repealing clause here in question is distributive in its application to each section of the act and neither in words nor in apparent design undertakes to repeal any acts or parts of acts, except those which would come in conflict with the provisions it attempts to substitute. The repeal was simply to displace all conflicting provisions, so that these could have full effect. But nothing can come in

conflict with a nullity and nothing is, therefore, repealed by this act on the ground solely of its being inconsistent with a section of this law, which is entirely unconstitutional and void. (*Sullivan* v. *Adams*, 3 Gray, 476 ; *Shepardson* v. *Milwaukee & Beloit R. R. Co.*, 6 Wis. 605 ; *State* v. *Judge of County Court*, 11 id. 50 ; *Tims* v. *State*, 26 Ala. 165.) "

The so-called Trust Law of the state of Texas, passed in 1889, was amended by the act of 1895, entitled "An Act to define trusts    *    *    *    and to repeal all laws and parts of laws in conflict with this act." The Supreme Court of the United States held that the earlier act was not repealed by the later, and closed its argument by saying : " In other words, as to that act (the later), the situation is this : It is either constitutional or unconstitutional. If it is constitutional, the plaintiff in error has no legal cause to complain of it. If unconstitutional, it does not affect the act of 1889, and that, as we have seen, imposes valid conditions upon the plaintiff in error, and their violation subjected its permit to do business in the state to forfeiture." ( *Waters-Pierce Oil Co.* v. *Texas*, 177 U. S. 28, 47.)

Even where there is a repealing clause in a statute, a portion of which is unconstitutional, such clause " is applicable only to laws inconsistent with its operative provisions." (*Devoy* v. *Mayor, etc., of New York*, 36 N. Y. 451.)

We have recently decided the precise question in a case of public interest which received careful consideration. (*People* v. *Dooley*, 69 App. Div. 512 ; 171 N. Y. 74.) The Greater New York charter passed in 1897 provided that the city magistrates throughout the entire city should be appointed by the mayor and hold office for a term of ten years. In 1901 the charter was amended so as to provide that at the ensuing general election there should be elected in each congressional district of the borough of Brooklyn one city magistrate and in the territory constituting that borough, two city magistrates at large for a term of six years commencing on the first day of January, 1902. At the first election held after the passage of the amended act one magistrate was

elected in each of the six congressional districts within the borough of Brooklyn and two in the borough at large. A controversy arose between the magistrates thus elected under the amended act and certain magistrates who had been appointed by the mayor under the original act after the amendment of 1901 went into effect. An action in the nature of quo warranto was brought by the attorney-general upon his own information to determine the question between the conflicting claimants. It was held that the provisions of the later act, making the magistrates elective instead of appointive, were unconstitutional; that the repealing clause was so connected with the unconstitutional provisions as to fall with them and that the provisions of the original act making the magistrates appointive were not repealed but stood in full force as if the later act had never been passed. This is the effect of the decision as we read the opinions of this court in connection with the prevailing opinion in the Supreme Court and the record which presented the questions to be decided.

We think, both upon principle and authority, that as the taxing clause of the act of 1906 is unconstitutional, the taxing clause of the act of 1905 was not repealed, modified or in any way affected.

Was the warrant valid, even if it recited both statutes in describing the offense? The essential part of the description was the failure of the relator to affix any stamp or pay any tax upon the sale of stock certificates by him to Catlin, the complainant. This was fully set forth. If the description had closed by saying, "in violation of the statute in such case made and provided," it would have met every criticism made by counsel. Instead of this, it said "in violation of chapter 241 of the Laws of 1905, as amended by chapter 414 of the Laws of 1906." The act of 1906 we have held unconstitutional as to the taxing clause, which left the act of 1905 in full force in that respect. If the reference to the void statute were rejected as a blank, or as surplusage, it could not have surprised the relator for he expressly stated in his petition for the writ that the later act was unconstitutional and

void.  When the affidavit upon which the warrant was issued
is read, as the relator read it, in connection with the warrant
itself, it clearly sets forth an offense under the valid act, but,
as it must be conceded, it would also set forth an offense
under the void act, if a void act could create an offense.  As
the relator is presumed to know the law, he is presumed to
have known that the legal effect of the warrant was to charge
him with a violation of the only operative statute referred to,
because a reference to a void act is no reference at all.  The
warrant must " state an offense " (Code Cr. Pro. § 152), and
the one before us would have stated an offense even if no
statute had been referred to, *contra formam statuti* or its
equivalent, is not essential.  The valid statute, however, was
recited and the recital of the void statute was the recital of a
nullity which, while it might mislead, could have no other
effect.  It did not mislead the relator, for he swore that the
act of 1906 was void and he knew, as we must presume, that
the act of 1905 was still in force.

There is another view, however, which makes the reference
entirely proper.  The act of 1906 although void as to the
taxing clause in section 315 was not altogether void.  Thus
section 317, which relates to the penalty for a failure to pay
the tax, was amended by the act of 1906 by adding to the
word " sale " the words " or transfer " in one place and the
words " or agreement to sell " in another.  The warrant does
not refer to the section violated, but to the statute violated,
and, hence, the effective reference to the act of 1906 was to
the part that is valid, which, as it related to the penalty, was
quite appropriate.

The ordinary writ of habeas corpus is limited in its inquiry
to questions of jurisdiction and power.  " Where the man-
date is defective in a matter of substance required by law
rendering it void," or where, although in proper form, it
" was issued in a case not allowed by law," the prisoner must
be discharged.  (Code Civ. Pro. § 2033.)  No inquiry into
the " legality or justice " of any mandate is permitted, except
as those terms include questions of jurisdiction or power.

(Id. § 2034; *People ex rel. Tweed* v. *Liscomb*, 60 N. Y. 559; *People ex rel. Young* v. *Stout*, 63 N. Y. S. R. 152; 144 N. Y. 699; 1 Fiero's Special Proceedings, 59.) The magistrate who issued the warrant before us had jurisdiction of the subject matter and of the person and, as we think, the warrant was "not defective in a matter of substance required by law" so as to render it void. (*Pratt* v. *Bogardus*, 49 Barb. 89; 22 Encyc. Pl. & Pr. 1080.)

The order appealed from should be affirmed.

CULLEN, Ch. J., HAIGHT, WERNER, WILLARD BARTLETT, HISCOCK, JJ. (and GRAY, J., in result), concur.

Order affirmed.