(81 Misc. Rep. 522.)

PEOPLE ex rel. NOYES v. SOHMER, State Comptroller.

DICK et al. v. SAME.

(Supreme Court, Special Term, Albany County. July, 1913.)

1. TAXATION (§ 537*)—ILLEGAL STAMP TAX—RECOVERY OF PAYMENT.

Persons who purchased stamps and affixed them to stock certificates in good faith between the date of the enactment of chapter 414, Laws 1906, amending Laws 1905, c. 214, imposing a stamp tax, and the date of the decision of the Court of Appeals declaring the taxing clause of such statute unconstitutional, are entitled to have the amount so paid refunded by the state.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 996–998; Dec. Dig. § 537.*]

2. STATES (§ 182*)—ILLEGAL STAMP TAX—CLAIM FOR PAYMENT MADE—ALLOWANCE OR REJECTION.

The action of the comptroller in returning a claim for taxes paid under the unconstitutional taxing clause of Laws 1906, c. 414, amending Laws 1905, c. 214, with a letter stating that he was returning same "because of the conclusion stated" in the opinion of the Attorney General, which conclusion was that the claim did not meet the requirements of the statute and was not sufficient to be either allowed or disallowed, did not constitute either an allowance or rejection of the claim.

[Ed. Note.—For other cases, see States, Cent. Dig. § 170; Dec. Dig. § 182.*]

3. MANDAMUS (§ 101*)—GROUNDS—REFUSAL TO ACT.

Where the comptroller of the state refuses to either allow or reject a claim for taxes paid under an unconstitutional statute, mandamus will lie to compel him to either approve or reject the claim as provided by law.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 211–216; Dec. Dig. § 101.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

Proceeding by the People, on the relation of Charles P. Noyes, for writ of mandamus against William Sohmer, Comptroller of the State of New York, and application by Evans R. Dick and others for writ of mandamus against the same defendant. Writs granted.

An application is made in each of the above-entitled proceedings for a peremptory writ of mandamus requiring the comptroller of the state to pass upon the claim of each of the relators covering an alleged excess payment of tax under the stock transfer act.

Goldman, Heidenheimer & Unger, of New York City, for relator Noyes.

David H. Miller, of New York City, for petitioners Dick and others.

Thomas Carmody, Atty. Gen. (Edward J. Mone, Deputy Atty. Gen., of counsel), for State Comptroller.

RUDD, J. [1] Chapter 241 of the Laws of 1905 imposed a tax of "two cents on each one hundred dollars of face value or fraction thereof" of stock sold. Chapter 414 of the Laws of 1906 amended that statute by basing the tax on "each share of one hundred dollars of face value or fraction thereof." The amendment taking effect May 11, 1906.

The Court of Appeals, in People ex rel. Farrington v. Mensching, 187 N. Y. 8, 79 N. E. 884, 10 L. R. A. (N. S.) 625, 10 Ann. Cas. 101, declared the taxing clause of the amending statute unconstitutional. The tax provision of the original enactment was left in operation. Between the time of the passage of the amended law and until the decision of the Court of Appeals the relators purchased certain stamps of the comptroller of the state and canceled the same, affixing the stamps upon the shares of stock irrespective of the face value, and now claim a refund from the treasury of the state for the amount of excess taxes paid, which it has been determined by the Court of Appeals were paid to and received by the treasurer of the state under a law which was unconstitutional in its requirement.

The claims here involved were presented to the comptroller of the state under chapter 186 of the Laws of 1910, which went into effect April 29, 1910. It was entitled "An act to amend the Tax Law in relation to refunds of taxes on transfers of stock," and added a new section to the Tax Law (Consol. Laws 1909, c. 60), known as section 280. This specifically refers to the refund of taxes erroneously paid. This provides in substance that if any stamp has been erroneously affixed to any certificate of stock the comptroller may upon presentation of the claim for the amount of such stamp, and upon the production of satisfactory evidence that such stamp was erroneously affixed, so as to cause loss to the person making the claim, pay such amount or such part thereof as he may allow such claimant out of any moneys appropriated for that purpose.

The section provides in detail as to the form in which the claims shall be presented, when they shall be presented, and that if the comptroller rejects a claim, or any part thereof, the claimant may file a claim for the recovery of such sum as the comptroller shall have refused to allow with the Court of Claims, now the Board of Claims,

which shall constitute a private claim against the state, and shall be subject to all the provisions of law governing such claims, except that such claims so presented shall be filed with the Court of Claims within 90 days from the date on which such claim shall be rejected by the comptroller.

[2, 3] The application here made is not for an adjudication upon the alleged claims of the relators, and does not call upon the court in any way to pass upon the validity of such claims. It is simply an application asking the court to require the comptroller to do that which the law calls upon him to do, namely, either approve of the claims or reject the claims. There seems to be little dispute in the facts. When this court determines the simple question whether or not the comptroller as a matter of fact rejected the claims, the questions here involved are answered.

It is not for this court to determine whether the claims should be rejected because no appropriation has been made by the Legislature. It is not for the court to determine whether the parties here applying are those who have sustained the loss alleged to have been made by the improper and illegal requirement on the part of the state of the amounts which have been paid in excess of what should have been paid. It is, as above stated, simply: Did the comptroller by the return of the claims accompanied by a letter of the Attorney General reject the claims? If he did, a basis has been laid for the presentation by the claimants of their claims to the Board of Claims. If they have not been rejected, the claimants here can find no jurisdiction within which they can seek to recover their moneys, or the moneys which have been received by the treasurer of the state in violation of the organic law of the state.

The expressions by the comptroller in the disposition of a claim presented should not be uncertain or indefinite. They should not be such as would require much hesitation on the part of a court to know whether the comptroller had as a matter of fact rejected the claim. It is a simple requirement; no reason need necessarily be assigned for the rejection. It should be absolute in its nature, and it should not result in misleading or in doubt. It should not be of such a character or in such form as would raise a question of doubt as to whether jurisdiction had been created in the tribunal provided by law to pass upon the real merits of the claim.

The comptroller returned the claim in 1910, accompanied by a circular letter and by a printed copy of the opinion of the Attorney General. This letter and the opinion are a part of the relators' moving papers. The comptroller stated that he was returning the claim "because of the conclusion stated" in the opinion of the Attorney General. The conclusion was:

"In my judgment, these claims do not meet the requirements of the statute; and I therefore advise you that they are not sufficient for your action either to allow or disallow the claim."

The comptroller evidently acted upon the advice of the Attorney General; that advice was that the claims were not sufficient to justify the comptroller acting upon them. If the comptroller did not act upon them, he certainly did not reject them. In fact, the comptroller

acts under the suggestion of the Attorney General to the effect that he does not either allow or disallow, and if he does not disallow he certainly does not reject.

In Flower v. State of New York, 143 App. Div. 871, 128 N. Y. Supp. 208, the court has held that persons who purchased and affixed such stamps to stock certificates in good faith before the statute was declared to be unconstitutional were entitled to have the amount paid refunded, and also that the Court of Claims would have no jurisdiction until the claim had been passed upon by the comptroller of the state. That certainly does not mean simply looked at by the comptroller; it means some kind of a determination by the comptroller as to the validity of the claim. It has been held in the Flower Case:

"It is clearly the duty of the comptroller to pass upon the plaintiff's claim, ascertain and determine the amount thereof, and certify to the same in proper manner, so that it may be paid from any funds properly applicable to that purpose."

The fact that there are a large number of similar claims pending and that the amount involved is large is not at all controlling. If that means that the state treasurer has received a large amount of money by the collection of excess taxes under a law which has been declared unconstitutional, it certainly seems as if it would be the duty of the officials of the state to promptly co-operate to the end that such amount, if illegally received, might be refunded. But, as above stated, it is not a question here of the legality of the claim, but simply for the construction by the court of the acts of the comptroller in the returning of the claims here involved. This court holds that the comptroller has not rejected the claims.

The court is asked to direct the comptroller to act in accordance with the duties which devolve upon him by law, namely, to allow or disallow, either to admit or reject, the claims, not indicating here in any way any opinion either as to the character of the claims or as to the validity of the claims or the owners thereof, simply to do that which the law requires to be done. Peremptory writs of mandamus covered by the petitions may issue.

Motions granted.