WILLIAM C. VAN ANTWERP et al., Composing the Firm of VAN ANTWERP, BISHOP & CO., Respondents, *v.* THE STATE OF NEW YORK, Appellant.

Constitutional law — unconstitutional statute not a law — when stockbrokers may recover value of stamps affixed to stock transfers under unconstitutional law although amounts thereof were deducted from customers' accounts.

1. An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.

2. Respondents, who are brokers, filed with the Court of Claims a claim for refund for the amount of excess stamps affixed by them to stocks sold for customers who were then and now remain indebted to the firm, and in cases where the amount thereof was deducted from the customers' accounts in remitting the proceeds of the sale of stocks to them. Such claim was made under chapter 186 of the Laws of 1910, now section 280 of the Tax Law, after the claim had been rejected by the comptroller. The act under which such payments were made has been declared unconstitutional. (*People ex rel. Farrington* v. *Mensching,* 187 N. Y. 8.) There is no finding that the respondents have ever been paid or reimbursed for any of the stamps erroneously affixed to the stocks. Under these circumstances, the customers, as such, have no cause of action against the state and do not come within the terms of the act, nor can the respondents recover from the customers, but the respondents, having mistakenly and erroneously canceled and destroyed the stamps, suffered loss within the meaning of the statute and are entitled to the refund provided thereby.

*Van Antwerp* v. *State of New York,* 170 App. Div. 98, affirmed.

(Argued April 27, 1916; decided July 11, 1916.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered December 9, 1915, affirming in part and reversing in part a determination of the Court of Claims.

The nature of the claims and the facts, so far as material, are stated in the opinion.

*Egburt E. Woodbury,* Attorney-General (*Wilber W. Chambers, Carey D. Davie* and *Joseph P. Coughlin* of counsel), for appellant. No loss was caused claimants on trades designated, and no recovery can be had therefor. (*Vrooman* v. *Turner,* 69 N. Y. 280; *Simson* v. *Brown,* 68 N. Y. 355; *Erdman* v. *Upham,* 70 App. Div. 315; *Martin* v. *Farnsworth,* 49 N. Y. 555; *Baker* v. *Drake,* 66 N. Y. 518; *Markham* v. *Jaudon,* 41 N. Y. 235; *Matter of O'Berry,* 179 N. Y. 285; *People ex rel. Jackson* v. *Potter,* 47 N. Y. 375; *People ex rel. Wood* v. *Lacombe,* 99 N. Y. 43.)

*Alton B. Parker, Samuel P. Goldman* and *William F. Unger* for respondents. Respondents are liable to their customers for the amount they took and retained for the stamps used. This liability is a "loss" within the meaning of the Refunding Act. (*Matter of O'Berry,* 179 N. Y. 285; *Daniel* v. *Hunt,* 77 Ala. 567.) Respondents are the real parties in interest and are also trustees of an express trust under section 449 of the Code of Civil Procedure. (*Friedman* v. *Schulman,* 46 Misc. Rep. 572; *St. James Co.* v. *Security Trust Co.,* 82 App. Div. 242; *Giselman* v. *Starr,* 106 Cal. 651; *Brown* v. *Powers,* 53 App. Div. 251.) The state is not relieved from its duty to refund to the respondents, by the fact that respondents reimbursed themselves out of their customers' pockets. (*United States* v. *American Tobacco Co.,* 166 U. S. 468; *Mason* v. *Sainsbury,* 3 Dougl. 61.)

*Nathan L. Miller* for H. Content & Company, intervening. The excess stamps were in each instance "so

erroneously affixed as to cause loss" to the claimants who alone were entitled to make a claim for a refund under chapter 186 of the Laws of 1910. (*People ex rel. Ferguson* v. *Reardon*, 197 N. Y. 236; *People ex rel. Farrington* v. *Mensching*, 187 N. Y. 8; *United States* v. *American Tobacco Co.*, 166 U. S. 468; *State* v. *Central Vermont Ry. Co.*, 81 Vt. 459.)

CHASE, J.  By chapter 414 of the Laws of 1906, section 315 of chapter 241 of the Laws of 1905 (now section 270, Tax Law) was amended.  As amended, so far as material, it reads as follows: "There is hereby imposed and there shall immediately accrue and be collected a tax as herein provided, on all sales, * * * or deliveries, or transfers, of shares or certificates of stock, * * * on each share of one hundred dollars of face value or fraction thereof, two cents."

That section as amended also provides, "The comptroller may, upon satisfactory proof that stamps have been erroneously affixed and canceled in payment of the tax upon a transfer and to the loss of an innocent person, refund the amount thereof from appropriations made for necessary expenses under this act, provided the tax justly due is paid upon such transfer."

The amendment, so far as it changed the act of 1905 to require a tax "on each share of one hundred dollars of face value or fraction thereof" instead of "on each hundred dollars of face value or fraction thereof," was declared unconstitutional and void by this court in *People ex rel. Farrington* v. *Mensching* (187 N. Y. 8).

The plaintiffs are stock brokers, and the successors of Bishop, Laimbeer & Co., whose assets they acquired, and whose liabilities they assumed.  The plaintiffs and their predecessors in business are referred to herein, generally, as respondents.

From June 27, 1906, to December 27, 1906, Bishop, Laimbeer & Co. sold and transferred many shares of stock

of the par value of less than one hundred dollars per share and affixed and canceled stamps on all of said sales and transfers at the rate of two cents on each share of stock sold or transferred. The excess stamps so affixed and canceled by them amounted to $857.80. The respondents presented a claim to the comptroller for that amount. Similar claims were presented to the comptroller by other stock brokers for alleged excess of stamps affixed and canceled by them respectively.

The records of the courts show some of the efforts that have been made to obtain a refund of the amount of stamps so erroneously affixed and canceled. (*Flower* v. *State of N. Y.* 65 Misc. Rep. 145; 143 App. Div. 871; *People ex rel. Noyes* v. *Sohmer*, 81 Misc. Rep. 522; 159 App. Div. 929; 210 N. Y. 619.)

In 1910, chapter 186 of the Laws of that year was enacted, which provides: "If any stamp or stamps shall have been erroneously affixed to any book, certificate of stock, or bill or memorandum of sale, the comptroller may, upon presentation of a claim for the amount of such stamp or stamps and upon the production of evidence satisfactory to him that such stamp or stamps was or were so erroneously affixed so as to cause loss to the person or persons making such claim, pay such amount, or such part thereof as he may allow, to such claimant out of any moneys appropriated for that purpose. * * * If the comptroller rejects a claim or any part thereof, the claimant may file a claim for the recovery of such sum as the comptroller shall have refused to allow, with the court of claims, which shall constitute a private claim against the state and shall be subject to all the provisions of law governing such claim, * * *." (Now section 280, Tax Law.)

The respondents' claim was rejected by the comptroller and it was then filed with the Court of Claims. That court upon the hearing and determination of the claim divided it into three parts —

A. $333.30, being the amount of excess stamps used on stocks sold for the firm or a member thereof.

B. $191, being the amount of excess stamps used on stocks sold for customers who then were and now remain indebted to the firm.

C. $333.50, being the amount of excess stamps used on stocks sold for customers where the amount thereof was deducted from the customers' account in remitting the proceeds of the sale of stocks to them.

The Court of Claims gave the respondents judgment for the first two amounts, but refused to allow the third amount. On appeal to the Appellate Division that court modified the findings of the Court of Claims and gave the respondents judgment for the full amount of their claim. It is conceded that stamps were erroneously affixed and canceled as claimed by the respondents. It is also conceded that the state has in its possession the amount paid by the respondents for the stamps so erroneously affixed and canceled. Neither the state as a body politic and corporate, nor the taxpayers of the state as such have any right to or interest in such amount so paid except to see that it is refunded to the persons entitled thereto as prescribed by the statute quoted.

The finding of fact relating to the excess stamps mentioned in the division of the respondents' claim marked " C " as modified by the Appellate Division is as follows: " The customers of Bishop, Laimbeer & Company did not pay them for the stamps used on sales or transfers made by Bishop, Laimbeer & Company for them. With reference to sales or transfers made for customers and designated ' C ' on the schedule annexed to the claim herein Bishop, Laimbeer & Company deducted the amount of the stamps from the proceeds of sale and retained that amount."

The finding of the Court of Claims, in substance, that Bishop, Laimbeer & Company were paid for the stock

transfer stamps used on stocks mentioned in "C" was reversed by the Appellate Division.

There is no finding of any kind that the respondents have ever been *paid or reimbursed for any of the stamps erroneously affixed to said stocks.* The state claims on this appeal that the respondents should not be allowed the $191.00 or the $333.50 for stamps used on stocks sold for customers.

Are the respondents persons who erroneously affixed stamps to the stocks mentioned in the parts of their claim marked "B" and "C," and have they been caused loss thereby? If so, the judgment appealed from is right, and it has been rendered in accordance with the express terms of the statute. They are indisputably the persons who affixed the stamps, and it seems to us that they are clearly the only persons who have been caused loss thereby. The stamps were purchased and owned by them. They sold the stocks and actually, although erroneously, affixed and canceled the stamps. The act of 1906, being unconstitutional did not constitute legal authority for any act done pursuant to its terms. The respondents in annexing and canceling the stamps in question destroyed their own property and such cancellation and destruction constituted a complete loss to them and not to their customers.

"An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." (*Norton* v. *Shelby County,* 118 U. S. 425, 442; *People ex rel. Farrington* v. *Mensching, supra.*)

The cancellation of the stamps did not constitute a sale to the customers nor create a legal claim that the respondents could in any way enforce against them.

If the customers had in fact subsequently paid for the erroneously canceled stamps, or they had with full knowledge of the facts ratified the acts of the respondents in

placing the stamps upon their stocks or in charging the amount thereof to their accounts before remitting the proceeds of the sale of stocks to them, they undoubtedly would be entitled to an assignment of the claim of the respondents against the state and be generally subrogated to the respondents' rights to recover for the stamps so erroneously canceled. Payment for the stamps by the customers has not been shown. It is not even claimed except as stated. The charge by the respondents of stamps to the account of the customers does not appear by an express statement in the accounts rendered. It can only be ascertained therefrom by computation. Ratification with knowledge by the customers of the charge by the respondents does not in any way appear. So far as appears the respondents could be compelled at the suit of the customers mentioned to refund the amount charged against them for stamps erroneously placed upon their stocks. If the customers have sustained a loss it is by the respondents improperly and without authority charging the amount of the stamps erroneously affixed to their stocks to and deducting the same from their accounts, and not because of the respondents mistakenly and erroneously canceling and destroying their own property.

The customers did not affix the stamps to their stocks or direct that they should be affixed thereto or in any way become liable to pay therefor. Even if the claim of the respondents is finally disallowed, the customers can, so far as anything appears in the record, recover from them the improper and unauthorized charges made against them.

The customers as such, unless they ratify the charge made by the respondents against their accounts, have no cause of action against the state and do not come within the terms of the act of 1910. It may not be of material importance in determining whether the state is liable to the respondents, but it is interesting to note that it was stated before us without contradiction that not one of the

alleged one hundred thousand customers of brokers on whose stocks stamps were placed in accordance with the provisions of the unconstitutional act have ever made a claim to the comptroller for a refund of the amount of stamps erroneously canceled on such stocks.

If we assume that the acts of the respondents in erroneously affixing the stamps were the acts of their customers, then respondents may be treated in this action so far as necessary as trustees for the benefit of such customers and their liability to such customers after recovery can be enforced against them as such trustees. (*United States* v. *American Tobacco Co.*, 166 U. S. 468; *People ex rel. American Exchange National Bank* v. *Purdy*, 196 N. Y. 270, and cases cited; *People ex rel. American Exchange National Bank* v. *Purdy*, 199 N. Y. 51; *Second National Bank* v. *City of New York*, 213 N. Y. 457; *State* v. *Central Vermont Railway Co.*, 81 Vt. 459; 2 Corpus Juris, 830. See *Rogers* v. *Atlantic, Gulf & Pacific Co.*, 213 N. Y. 246.)

The judgment of the Appellate Division should be affirmed, with costs.

WILLARD BARTLETT, Ch. J. (concurring). I concur in the conclusion reached by Judge CHASE, on the ground that the brokers who charged their customers with the cost of the stamps are liable to such customers for the amounts so charged, and that, therefore, the brokers must be deemed to have suffered loss within the meaning of the statute.

SEABURY, J. (dissenting). This is an appeal by the state of New York from so much of a judgment of the Appellate Division as reverses a determination of the Court of Claims and awards the claimants the full amount claimed together with interest and costs. The amount sought to be recovered from the state is the value of certain stock transfer stamps, which it is claimed were erro-

neously affixed to certain certificates of stock and memorandum of sale of stock upon the transfer thereof, and canceled in payment of taxes. The stamps affixed were so affixed in deference to the provisions of chapter 414 of the Laws of 1906. The tax attempted to be imposed by that act of the legislature was upon each share of stock of $100 of face value or fraction thereof. That legislative enactment was declared unconstitutional in *People ex rel. Farrington* v. *Mensching* (187 N. Y. 8) because it unreasonably discriminated against shares of stock of the par value of less than $100. By chapter 186 of the Laws of 1910 provision was made to refund to the persons who suffered loss the amount of taxes erroneously paid.

There are three classes of claims presented by the claimants:

1. Claims for stamps erroneously affixed by the brokers in transactions in their own behalf.

2. Claims for stamps affixed to transfers of stock sold for the account of their customers, where the customers still owe them some balance on stock transactions, although they have been reimbursed for the money paid for stamps.

3. Claims for stamps which were affixed to transfers of stock for customers where the claimants or their predecessors have been reimbursed by their customers for the money paid for the stamps that were affixed.

The Court of Claims allowed the claimants to recover for transactions coming within the first and second classes, but declined to allow a recovery for cases coming within the third class. The Appellate Division reversed the determination of the Court of Claims in so far as it precluded the claimants from recovering for cases within the third class and awarded the claimants judgment for the claims within all of these three classes. The only question now presented for review is whether the claimants should be permitted to recover for moneys paid for stamps which were affixed to transfers of stock for customers where the

claimants or their predecessors have already been reimbursed by their customers for the stamps so affixed. In my judgment there is absolutely no foundation for the claims of the claimants to recover from the state upon cases coming within the third class. The statute contemplates that a recovery might be had when stamps had been erroneously affixed "so as to cause loss to the person or persons making such claims." The statute makes it perfectly clear that the only basis for a recovery under its provisions is that the person making the claim is the person who has sustained the loss. The claimants and their predecessors, who were stock brokers, have sustained no loss for stamps erroneously affixed where they have been reimbursed by their customers. To permit them to recover this money from the state is to permit them to acquire state funds which are appropriated only for the benefit of those who sustained a loss. The persons who sustained loss by reason of the stamps having been erroneously affixed are the customers who paid for the stamps. The customers who suffered the loss have never assigned their claims to the claimants or their predecessors. Some of these customers are now dead and others cannot be located. The claim of the claimants so far as it relates to stamps affixed for the benefit of customers who have reimbursed their brokers is plainly an attempt on the part of the brokers to get something for nothing. It is said that the customers have not demanded this sum, but I cannot see that that fact gives these claimants any right to take this money from the state. It is suggested that there are many claims of this character amounting in all to several hundred thousand dollars and it is urged that if the brokers are not permitted to recover upon them there can be no recovery. This fact furnishes no reason why the brokers who have suffered no loss should be permitted to obtain this money from the state. The state has made provision to indemnify those who suffered loss. If those who have suffered loss make no claim to be reimbursed that is no

reason why the state should pay this money to others who are not entitled to .it. It seems to be assumed that because the state has shown a willingness to reimburse those who have suffered loss and those within this class cannot be located or induced to make a claim, that, therefore, some one must have the right to take this money from the state. This assumption and the claim that is based upon it is unfounded and wrong. The Court of Claims has found as a fact that the customers of the brokers represented by the claimants have not constituted the brokers or the claimants " their attorney in fact, nor in any way authorized the claimants to collect for or on their behalf any moneys due to the said customers for or on account of the erroneous affixation and cancellation of any stamps." This finding has not been reversed by the Appellate Division. Several theories more or less ingenious are now advanced by the claimants to enable them to get possession of the money of the state. It is urged that the brokers have suffered the loss, and, therefore, are within the contemplation of the statute, and may maintain this claim in their own right. That the brokers did not suffer the loss is conclusively established by the fact that they were fully reimbursed by their customers for the money which they paid for stamps. How they can be said to have suffered the loss when it is conceded that they have been reimbursed by their customers is not clear to me. The fact that the brokers originally owned the stamps and that they erroneously caused them to be affixed to the certificates of stock does not establish that they suffered any loss. The contrary is conclusively established by the fact that the brokers charged the money paid for these stamps to their customers and were fully paid by their customers. To permit the brokers to recover from the state is to permit them to be twice paid for the money advanced for the benefit of their customers. It is entirely immaterial whether the cancellation of the stamps constituted a sale

to the customers or whether the fact that the broker advanced the money served to give the broker any legal claim against the customer. The fact is that the brokers did charge the sum they advanced to their customers and that the customers paid the amount to the brokers. It is also suggested that if the customers have sustained a loss, it is only because of the wrongful act of the brokers in deducting the amount paid for the stamps that were erroneously affixed, from the accounts of their customers. If, for the sake of argument, we assume that this deduction by the brokers from the accounts of their customers was a wrongful act, it is manifest that the position of the brokers cannot be legally improved or bettered by founding their claims upon their own wrongful or illegal act against their customers. If the brokers' act in deducting the amount paid for the stamps from the accounts of their customers was a wrongful act, the brokers cannot now invoke their own wrong as a reason why the state should *pay them* for a loss which their *customers have sustained.* The fact that the customers did not pay the brokers this sum with knowledge of all the facts or ratify the act of the brokers in deducting this sum from their customers' accounts in no way serves to strengthen the claim which the brokers now make against the state. The fact that not one of the alleged one hundred thousand customers of brokers upon whose stocks stamps were affixed has made a claim to the comptroller for a refund gives the brokers no right to collect this money that is due to the customers. It is suggested that the absence of an express finding that the brokers were actually paid by their customers for the moneys advanced for stamps precludes us from regarding the brokers as having been paid. There is no significance in the omission to make a finding to this effect. The brokers sold the stocks for their customers and before doing so affixed the stamps and then remitted to their customers the proceeds of the sales after deducting the amount paid for stamps. It is immaterial whether

28

the amount received for the sale of stocks was paid to the customers in cash, and the customers paid in cash to the brokers the amount advanced in stamps, or whether the brokers first deducted the amount paid for stamps and paid the balance to their customers. The fact which is evident is that the brokers were entirely paid for the money they advanced for stamps. The suggestion that the brokers should be permitted to recover upon the theory that they act as trustees for the benefit of their customers is altogether inconsistent with the theory that the brokers in their own right may recover this money. The prevailing opinion holds that the customers as such have no cause of action against the state, and upholds a cause of action in the brokers on the ground that they are the persons who erroneously affixed the stamps and have been caused loss thereby. If this be so, the brokers are permitted to recover in their own right on the theory that they are the persons who have suffered loss, and there is no basis for holding that they " may be treated in this action so far as necessary as trustees for the benefit of such customers."

These claimants are asking that the state money be paid to them. The burden is upon them to establish a right to the money which they seek. This right they have entirely failed to establish. Having been already reimbursed by their customers they have suffered no loss, and the fund which the state holds has been appropriated for the benefit of the customers who have actually suffered the loss. If this were a claim of one individual against another it is inconceivable that the individual sued would be compelled to pay unless the individual bringing the action could show a better title than these claimants have shown.

In my opinion, there is no basis for permitting the stock brokers represented by these claimants, who have already been paid by their customers, to recover the sum which they claim from the state.

I vote in favor of the reversal of that part of the judgment of the Appellate Division from which the state has appealed.

WILLARD BARTLETT, Ch. J., HISCOCK and COLLIN, JJ., concur with CHASE, J.; SEABURY, J., reads dissenting opinion, and HOGAN, J., concurs; CARDOZO, J., not voting.

Judgment affirmed.