THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* BOARD OF EDUCATION OF CENTRAL SCHOOL DISTRICT No. 2, TOWNS OF FORT ANN, HARTFORD AND KINGSBURY, Appellant, et al., Defendants.

Third Department, June 29, 1945.

*Ernest E. Cole,* attorney for appellant.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Solicitor-General,* and *Edward R. Murphy, Assistant Attorney-General* of counsel), for respondent.

FOSTER, J.    This is an appeal from a judgment of the Supreme Court, entered in Albany County after a trial before the court without a jury.    The judgment is against the defendant, The Board of Education of Central School District No. 2, Towns of Fort Ann, Hartford and Kingsbury, New York, for the sum of $1,653.60.

On October 28, 1937, the Commissioner of Education, acting under article 6-B of the Education Law (§ 180), laid out a

central school district which embraced, among other districts, a district known as Common School District No. 4 of the Town of Fort Ann, N. Y. Subsequently, and on the 12th day of November, the central district was established by an affirmative vote of a majority of the inhabitants present at a school district meeting called for the purpose of voting on the new district. It must be assumed that a board of education for the new district was also elected at that meeting for the statute then in force (§ 183) provided: " * * * The first board of education shall be elected at the meeting at which the resolution is adopted establishing such central school district. * * * " We take such language also to mean that after the resolution was passed, and the Board of Education elected, the central district then became a legal entity, for the statute further provided that the members of the board should take office at once. Thus, the central district was legally established on the 12th day of November, 1937, although the designating order of the Acting Commissioner of Education was not signed until November 20, 1937.

Despite the establishment of the new central district the old Common School District No. 4 continued to exist for some purposes. Section 183 of the Education Law then provided in part: " An existing district within the meaning of this article shall be construed to mean a district that lies within the boundaries of a central school district as established pursuant to the provisions of this article. Each such existing district shall be deemed to continue to exist in law for the purpose of paying all its just debts, including bonds or other certificates of indebtedness lawfully issued prior to the establishment of such central school district, together with all interest thereon as the same shall fall due." Section 184 provided in part: " The district officers of the several existing districts shall remain in office until August first next following the establishment of such central school district for the purpose of conducting and maintaining school in their several districts, the carrying out of contracts in force at the time of the establishment of such central district, of paying all just debts and obligations of such existing districts due and payable on or prior to said August first, and of levying and collecting taxes raised or necessary to be raised for any of said purposes."

It is plain from the foregoing statutory excerpts in force at the time that the officers of Common School District No. 4 continued in office until August 1, 1938, clothed with the powers and duties indicated. It is equally plain, by implication at

least, that on and after August 1, 1938, such powers and duties were to be exercised by the Board of Education of the new central district if the necessity for their exercise arose. By implication because it cannot be assumed that all of the affairs of the common school district would be closed in a year or less, and since its former officers were out of power by August 1, 1938, the only officials left to perform their functions were the members of the Board of Education of the central district. Confirmation of this may be found in the statute (§ 183), wherein the Board of Education of the central district is given power to dispose of the existing district's property with the consent of the voters therein, and to apportion certain moneys of the existing district among its taxpayers.

The foregoing matters pertain to an understanding of the controversy on appeal.

There was State property within Common School District No. 4, assessed by legislative permission (L. 1934, ch. 652) and upon which the State paid taxes. The proof indicates that the warrant for the collection of taxes in this district was delivered to the collector about September 1, 1937. The State's share of the taxes was then due and payable, but in accordance with an apparent custom the State's tax bill was not presented until the following year, and was not paid until September 30, 1938. This date, it should be noted, was after the common school district officers were out of office. The tax money, amounting to $2,838.38, was nevertheless paid to C. H. Schafer, former collector of the common school district. It should have been paid, as we view it, to the Board of Education of the central district, which at that time must be held as a matter of law to have had charge of any business then extant of the common school district. Mr. Schafer deposited the money to the credit of the common school district, where it remained for some time, and finally on June 1, 1943, he turned the money over to the Board of Education of the central district, where it should have been sent in the first place. We think it clear however that this money did not and does not belong to the central district. It was and is tax money levied for the common school district for the year 1937, and the statute passed in 1938 (L. 1938, ch. 609) which provides for the assessment of State property in the new central school district, in no way alters this fundamental fact. As tax money it is not public money. The money of the State paid as a tax is no different from money paid as a tax by a private taxpayer.

If the foregoing reasoning is correct the question is posed: what shall be done with the money?

The statute (Education Law, § 183) provided that property of an existing district might be sold by the Board of Education of the central district, with the consent of the voters of the existing district, and directed that the proceeds be apportioned among the taxpayers of the existing district as they appeared upon the last completed town assessment roll preceding the date of the sale. The statute then provided as follows: " Any balance of funds *except public moneys* remaining in the hands of the district officers of the several districts included within the central school district on *July first next following the date of the establishment of such central school district,* after paying all outstanding obligations then due and payable shall likewise be apportioned among the taxpayers of the existing district to which such balance has been credited as above provided." (Emphasis supplied.)

Of course the tax money in question was not physically in the hands of the officers of Common School District No. 4 on July 1, 1938, for as a matter of fact it was not paid by the State until September 30, 1938, and therefore it is not literally a fund within a strict construction of the statute. It would seem, however, that it was constructively in the possession of such officers, and that such possession brought it within the statute. The warrant for taxes had been delivered to the collector, and legally the taxes, including the State's share, were due. To hold otherwise is to leave the ownership of the fund in question dangling in the air. Clearly, we think, any surplus of this money, which was tax money and not public money, above and beyond the obligations of former Common School District No. 4 belongs to the taxpayers of that district.

The theory of the complaint herein, and upon which judgment has been rendered, is that the State, as a taxpayer, is entitled to its proportionate share of the tax money involved over and above any obligations of the common school district as of July 1, 1938. There is some proof that those obligations amounted to $238.38. Subtracting this amount from the tax money of $2,838.38 leaves the sum of $2,600. The total assessed valuation of all the property in the common school district for the school year beginning July 1, 1937, was $495,849, and of this the State was assessed for $315,375, or 63.6%. This percentage applied to $2,600 equals $1,653.60, the amount of the judgment herein.

Aside from some doubt as to the accuracy of the indebtedness found against the common school district as of July 1, 1938,

the mathematical computations involved are doubtless correct. But the query presents itself whether direct action by way of a suit to recover money, as taken by the State, is an appropriate and proper remedy under the circumstances. The State, as a taxpayer, has neither greater nor lesser rights than other taxpayers, and if it may bring an action such as this, other taxpayers may bring similar actions. The duty to apportion the money however has been confided by the Legislature in the first instance to the Board of Education of the central district, and not to the courts. Any taxpayer may institute a proceeding under article 78 of the Civil Practice Act to compel the Board to apportion the money as a duty enjoined upon it by law, and this, we think, is the proper remedy, and not a plague of law suits, or a law suit in one instance and apportionment by the Board in others. We do not find that the State ever made a demand upon the Board to apportion the money under the statute; it simply demanded what it claimed to be its share. Indeed, there was scarcely time for apportionment so far as the Board was concerned. The money was not received by the Board until June 1, 1943, and this action was commenced by the State on July 5, 1943.

Moreover, it is questionable at least whether any taxpayer has a right to possession of any of the money involved until an apportionment has been made by the administrative body to whom the power to apportion has been given. Unless the right to possession exists an action to recover money does not lie. And it may also be pointed out that other taxpayers, who are certainly interested, have not been made parties to this action.

The judgment appealed from should be reversed and the complaint dismissed, with costs and disbursements on appeal to the appellant.

All concur.

Judgment reversed and complaint dismissed on the law and facts, with costs and disbursements on appeal to the appellant.