Dye, J. (concurring).
I am in complete agreement with Judge Fuld that the 1959 amendment (L. 1959, ch. 881) to section 45-a of the Pari-Mutuel Revenue Law (added by L. 1956. ch. 837, § 1) effectively excludes reimbursement to a race track operator for Federal taxes on the amounts received out of the so-called “ construction account ”, and that the order appealed from should be reversed and the petition dismissed. However, I would go further and deal with the challenge aimed at the validity of the 1956 act as a whole.
I do not overlook the judicial policy noted by Judge Fuld of avoiding constitutional issues whenever possible or that the respondents urge us not to reach the constitutional question, since it was not raised in the court below. However, the usual, reasons for avoiding such an issue are not available here. There is no surprise. All the parties filing briefs have dealt *312 with the matter exhaustively. It is before us — we may not ignore it. In fact, constitutionality is mentioned in all the opinions filed herewith. In any event, there are times when a court-made policy must yield. This is such a time, for we are faced with a problem the answer to which will affect the tax revenues of the State and incidentally its millions of taxpayers, all of whom, though unnamed, are interested parties (cf. People ex rel. Unger v. Kennedy, 207 N. Y. 533; Palmer v. Board of Educ., 276 N. Y. 222). The avoidance of future, yet imminent, litigation is a major factor in my conclusion. The problem is basic, involving as it does the reach of constitutional safeguards surrounding the use of public funds.
When the People relaxed the long-standing constitutional ban ag-ainst gambling by excepting pari-mutuel betting on horse races (N. Y. Const., art. I, § 9, Nov. 7, 1939), no change was made in other fundamental concepts imbedded in other sections of the Constitution, and which are pertinent to our present problem. In substance, these regulate and restrict the use of public funds. They were designed to put an end to the use of the credit or property of the State for other than a public purpose, a mischief which in times past had become intolerable (2 Lincoln, Constitutional History of New York; 10 New York State Constitutional Convention Committee, 1938, Problems Eelating to Taxation and Finance). No longer may the money or credit of the State be given or loaned to or in aid of any private corporation, association or private undertaking (N. Y. Const., art. VII, § 8). The power of taxation can never be surrendered, suspended or contracted away except for securities issued for public purposes pursuant to law (art. XVI, § 1). Every law which imposes or continues a tax shall distinctly state the tax and the object to which it is to be applied (art. Ill, § 22). Funds belonging to the State or under its control can only be paid out by legislative appropriation (art. VII, § 7) and even then only upon the audit of the Comptroller (art. V, § !)•
As matter of law and clear intendment the moneys set aside in the “ construction account ” are in any sense of the words “ public funds Concededly, they are derived from the 15% set aside from the pari-mutuel betting pool from which taxes due the State are to be paid (L. 1949, ch. 341; L. 1954, ch. 513; *313 L. 1956, ck. 837, adding Pari-Mutuel Revenue Law, § 45-a) and are not available to the track operators until the total taxes paid by all of the tracks for a given year exceed the totals for 1955. In the meantime the State has all the indicia and attributes of beneficial ownership. The funds are set aside in a special account subject to periodic audit, and such moneys may not be removed from the jurisdiction of the State, be invaded for any purpose, or any part thereof used except for the purposes provided in subdivision 10 of the 1956 law, and then only upon the prior approval and direction of the State. The track’s only interest in the “ construction account ” is to hold it subject to the State’s direction—at best, it is a mere nominee. The contention to the contrary is without substance and may not be sustained in face of our prior rulings that “No exaction can be lawfully made of a citizen by way of tax, impost, or excise, except under the authority of the legislature, and the product of such imposition is public money.” (People ex rel. Einsfeld v. Murray, 149 N. Y. 367, 374-375, quoted with approval in Fox v. Mohawk & Hudson Riv. Humane Soc., 165 N. Y. 517, 523.)
Nor does the fact that the moneys have not yet made their way into the State Treasury change the public character of the fund. We long ago said that money “ raised in any manner through the state as an exaction from the citizen by the taxing or licensing power of government”, whether yet collected or not, constitutes public funds and may not be diverted for private use (Fox v. Mohawk & Hudson Riv. Humane Soc., 165 N. Y. 517, 524, supra; cf. Matter of Guiteras, 122 Misc. 523, affd. 214 App. Div. 722).
In Ayers v. Lawrence (59 N. Y. 192, 198) we pointed out that 1 ‘ Municipal corporations seldom have property, funds or estates in possession to be wasted or injured save the taxes collected or in process of collection * * * The legislature have used several words for the sole purpose of embracing every right and interest which might need protection ” (emphasis supplied). (Cf. People v. Board of Educ., 269 App. Div. 456 [3d Dept.], per Foster, J.).
Again, in Samuel Adler, Inc., v. Noyes (285 N. Y. 34, 36) the plaintiff sought to recover a license fee, contending that title to the money remained in the plaintiff, and was not in the State, so that a suit in the Court of Claims would not be necessary. Our *314 answer there is relevant here: ‘ ‘ The fee paid by this plaintiff was absorbed into the general fund and had thereafter no severable character.” (Cf. Psaty v. Duryea, 306 N. Y. 413.)
The petitioner, Roosevelt, is a private corporation, as are the other harness tracks in this State, organized for the purpose of making a profit for their shareholders. The fact that a portion of their income is paid to the State in the form of taxes in no way affects or changes that status. The “ construction account ” authorized by the 1956 enactment of section 45-a is, primarily, a carefully contrived device in aid of private enterprise.
In this State there are many individuals, associations and corporations who engage in business for profit and who pay taxes, but until now no one has assumed that this gives the State a proprietary interest in their undertaking justifying special treatment by way of tax exemption, or by direct subsidy.
We are told that the “ construction account ” serves a laudable purpose; that the State will be the ultimate beneficiary through increased tax revenue. Be that as it may, “ However important, however useful the objects designed by the legislature, they may not be accomplished by a gift or a loan of credit to an individual or to a corporation.” (People v. Westchester County Nat. Bank, 231 N. Y. 465, 475.)
Subdivision 8 of section 45-a provides that the moneys in the “ construction account shall be held * * * not as public moneys ”. This characterization neither inhibits nor prevents the court from reaching a contrary conclusion as matter of law. True, such labels frequently serve a useful purpose in ascertaining legislative intent. They may not, however, serve as a substitute for legislative power, which finds its source in the Constitution. If it were otherwise, the State would soon be divested of all its funds simply by labeling them as ‘ ‘ private ’ ’.
The petitioner’s reliance on United States v. Maryland Jockey Club (210 F. 2d 367, cert, denied 347 U. S. 1014), involving income tax litigation, is misplaced, for several reasons. First, the court there expressly declined to rule on where title to the “construction fund” lay (id., p. 371) basing its decision on other grounds. In view of our Constitution’s prohibitions, we, of course, cannot avoid that question. It is noteworthy, though, that the race track operator in that litigation adopted the very *315 position to which the instant petitioner so vehemently objects, that title to the fund vested in the State. Secondly, the court held that the moneys paid from the account were not taxable to the track until received from the State {id., p. 369). That decision is in no way helpful to the petitioner.
Whenever the People have undertaken to give money or property of the State to individuals, associations or private corporations they have invariably done it by constitutional means. For instance, when the bonus for veterans was urged by popular demand, they adopted section 18 of article VII, as was also the case in the elimination of railroad grade crossings (art. VII, § 14), as well as the authorization in respect to public housing (art. XVIII, § 2). I see no reason why such an orderly procedure should not be adopted in this instance.
Under this view of the case, it necessarily follows that the “construction account ” may not be sustained in reliance on principles of contract law. In legal contemplation an unconstitutional legislative enactment is a nullity. It creates no rights, imposes no duties, protects no one and is no justification for conduct which is otherwise illegal. It is of no more effect that if it had not been passed (Matter of Long Sault Development Co. v. Kennedy, 212 N. Y. 1, writ of error dsmd. 242 U. S. 272; Van Antwerp v. State of New York, 218 N. Y. 422; Matter of Kesbec, Inc., v. Taylor, 253 App. Div. 353, mod. on other grounds 278 N. Y. 293, motion for rearg. denied 278 N. Y. 716; 16 C. J. S., Constitutional Law, § 101; 9 N. Y. Jur., Constitutional Law, § 259). Thus the State has breached no contractual obligation, nor has the track operator gained any rights that have been impaired (N. Y. Const., art. XVI, § 1).
For these reasons, I am satisfied that section 45-a, in its entirety, is constitutionally invalid.